Exhibit A

Exhibit A

Paul C. Echo Hawk
ECHO HAWK LAW OFFICE
PO Box 4166
Pocatello, Idaho 83205
Tel: (208) 705-9503
Fax: (208) 904-3878
E-mail: paul@echohawklaw.com

FILED IN THE
SHOSHONE-BANNOCK
TRIBAL COURT

2023 FEB 27 A 11: 37

CLERK OF THE COURT

BY: SS
COURT CLERK'S OFFICE

SHOSHONE-BANNOCK TRIBAL COURT
FORT HALL RESERVATION
CIVIL DIVISION

| | |
|---|---|
| SHOSHONE-BANNOCK TRIBES; and FORT HALL BUSINESS COUNCIL,<br><br>    Plaintiffs,<br><br>V.<br><br>VANIR CONSTRUCTION MANAGEMENT, INC.,<br><br>    Defendant. | NO. 2023-CV-CM-0051<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COME NOW Plaintiffs Shoshone-Bannock Tribes and the Fort Hall Business Council (hereinafter collectively the "Tribes") by and through their counsel of record, Paul C. Echo Hawk of ECHO HAWK LAW OFFICE and Bill Bacon, General Counsel of the Tribes, and allege and aver as follows:

## I. INTRODUCTION

1. This lawsuit seeks the recovery of damages incurred by the Tribes because of the negligence and breaches of contract by Vanir Construction Management, Inc. ("Vanir") stemming from the design, construction, and contract administration of the Phase II Casino Expansion Project ("Project") within the exterior boundaries of the Fort Hall Reservation.

## II. PARTIES, JURISDICTION, AND VENUE

2. The Shoshone-Bannock Tribes is a federally recognized Indian Tribes located on the Fort Hall Reservation.

3. The Fort Hall Business Council is the governing body of the Shoshone-Bannock Tribes.

4. Vanir is a California Corporation with its headquarters located in Sacramento, California, doing business at all relevant times within the boundaries of the Fort Hall Reservation and the State of Idaho.

5. This Court has personal and subject matter jurisdiction over Defendant Vanir pursuant to §§ 3-1-1, 3-1-14(a) and (b)(2), 3-1-15, 4-1-1, 4-1-2, and 4-1-3 of the Shoshone-Bannock Tribes Law and Order Code. The Court further has jurisdiction over Vanir because Vanir's actions and inactions threaten or have a direct impact on the Tribes' political integrity, economic security, health, and welfare. Vanir entered a contractual relationship with the Tribes by written agreement and expressly consented therein to the jurisdiction of the Shoshone-Bannock Tribal Court.

6. Vanir and the Tribes agreed contractually that the Shoshone-Bannock Tribal Court has exclusive jurisdiction over any dispute between the parties and that the laws of the Shoshone-Bannock Tribes Law and Order Code applies to this dispute.

7. Venue is proper because the relevant actions and/or inactions took place within the boundaries of the Fort Hall Reservation, including but not limited to the contract execution and performance. The subject matter of this dispute, namely the Phase II Casino Expansion Project, is also located on the Fort Hall Reservation.

### III. GENERAL ALLEGATIONS

8. The Tribes and Vanir executed an agreement on or about July 14, 2015. ("Vanir Agreement"). The Tribes hired Vanir to oversee the completion of the design and the construction of the Shoshone-Bannock Tribes Phase II Casino Expansion Project ("Project"). The Vanir Agreement set out specific responsibilities and tasks for Vanir to perform to ensure that the Project was successfully and properly designed and built. The Project consisted of a new casino facility that connected to the west side of the pre-existing Hotel and Event Center.

9. As an owner with limited and insufficient resources to manage large and complex construction projects, the Tribes hired Vanir "to assume full responsibility for the management of the Phase II – Casino Project . . . ." Vanir's scope included significant pre-construction activities

such as project planning (budget, scheduling, TERO planning) and oversight of the design and procurement of the contractor. Vanir's scope also included significant construction management activities, including contract administration. Vanir's contract administration duties included being responsible for the Tribes' response to contractor requests for information, submittals, schedule adjustments, change order requests and payment applications. Vanir also "represent[ed] the interest of the Owner at weekly video meetings and at monthly Owner/Design Consultant/Contractor meetings." Vanir, along with the design consultants, also was responsible to "monitor the quality of construction to guard the Owner against defects and deficiency in the work of the Contractor." Essentially, Vanir agreed to be the "eyes and ears" of the Tribes throughout the planning, design, and construction of the Project. The Owner ultimately paid Vanir over $2.5 million for these efforts.

10. Unfortunately, the Project was fraught with turmoil almost from the outset. The first project architect, Thalden Boyd Architects, LLC ("TBE"), materially breached the contract through abandonment based in part on allegations that the Tribes, through Vanir, failed to timely and adequately communicate. This termination, and subsequent hiring of a new architect, FFKR, caused considerable project delay and increased construction costs.

11. After the Tribes retained FFKR as the project architect at the direction of Vanir, the Project continued to be delayed and the cost estimates increased. As the design progressed, Vanir recommended, and the Tribes agreed to pay Vanir to conduct a comprehensive constructability review of FFKR's design. Vanir's review found thousands of errors, omissions, and missing scopes within FFKR's design documents. However, despite discovering significant defects, Vanir did not recommend delaying the bidding to allow FFKR time to remedy the defects. Vanir also did not warn the Tribes that design errors and omissions would likely result in significant change order requests from the contractor and cause significant delays to the completion of the Project. Instead, Vanir allowed the plans to go out to bid during the late summer while it was paid more money by the Tribes to conduct a "backcheck" of its constructability review to determine how many of its comments were covered by subsequent updates from FFKR.

COMPLAINT - 3

12. Just three days before bids were due, Vanir completed its "backcheck" on its constructability review. Notably, Vanir determined the design team had only "addressed 40-50% of our backcheck comments." This means the design team had not yet addressed hundreds of concerns noted in Vanir's original constructability review. Vanir failed to notify the Tribes of this concern. In addition, Vanir did not recommend to the Tribes that this backcheck or constructability review be provided to the bidders.

13. After Ormond Builders, Inc. ("OBI") was selected as the general contractor for the Project, challenges arose during construction. Vanir ignored its own constructability review and backcheck reports when providing recommendations on OBI's change orders. This became particularly damaging in the OBI arbitration with respect to the L-900 lighting, which Vanir noted in its backcheck comments as a missing scope item yet Vanir strongly encouraged the Tribes to reject OBI's L-900 lighting change order request.

14. Numerous disputes arose between OBI and the Tribes during the construction of the Project. These disputes were in large part related to design and project management issues for which Vanir was responsible as the Tribes' Owner Representative.

15. Based on Vanir's professional assessment, analysis, and guidance, the Tribes ultimately terminated OBI in early April of 2018. The Tribes retained Big-D Construction Corp. ("Big-D") to be the replacement contractor to complete the Project.

16. The replacement contractor reached Substantial Completion of the construction occurred on or around January 18, 2019.

17. Shortly before and after the OBI termination, OBI filed 3 arbitration demands with the American Arbitration Association ("AAA").

18. In April of 2019, the Tribes and OBI participated in a prolonged arbitration hearing over the design, construction, and contract administration of the Project. Both OBI and the Tribes asserted claims against each other. OBI alleged, among other claims, that Vanir mismanaged the Project as the Owner's Representative causing significant cost overruns and that Vanir failed to properly administer the construction contract as the Owner's Representative.

COMPLAINT - 4

19. The AAA administered the arbitration hearing with a three-arbitrator panel ("Panel"). The Panel issued two orders after the hearing. The Panel issued the first order, referred to as an Interim Award, on June 6, 2019. The Panel then issued the final order, referred as the Final Order, on October 30, 2019. The Interim and Final Awards included a total award of $2,937,622.42 in favor of OBI against the Tribes.

20. The following are some key findings of the Arbitration Panel:
   - The plans and specifications were not sufficient to construct the work. To support this finding, the Panel cited to Vanir's constructability log and backcheck identifying over 1,300 design issues.
   - The Tribes did not timely respond to the contractor's RFIs, CCPs, and other submittals.
   - The Tribes failed to disclose material information to the bidders.
   - The Tribes did not follow the contract procedures regarding change orders.
   - The Tribes did not respond to some OBI's correspondence and at other times simply ignored OBI's requests for contract modifications.

21. The Arbitration Panel's findings and award against the Tribes in favor of OBI were caused by the negligence and failures of Vanir.

22. The Tribes and OBI subsequently negotiated a confidential settlement and resolved all disputes between the Tribes and OBI.

23. Thereafter, the Tribes sued both TBE and FFKR in Tribal Court and resolved the disputes through negotiated settlements that only partially compensated the Tribes for damages caused by the negligence of Vanir.

24. The Tribes filed a lawsuit against Vanir in Tribal Court on May 26, 2020. The parties executed a Tolling Agreement, effective May 4, 2020, that allowed for the lawsuit to be dismissed without prejudice while the parties attempted to resolve their dispute through non-minding mediation. After the Tolling Agreement was executed, the Tribes voluntarily dismissed, without prejudice, the lawsuit against Vanir.

COMPLAINT - 5

25. In December of 2022, the Tribes settled a dispute with the Big-D for an amount that only partially compensated the Tribes for damages caused by the negligence of Vanir.

26. On February 15, 2023, the Tribes and Vanir attempted to resolve their dispute through non-binding mediation, which was required under the parties' contract prior to filing a legal action in Tribal Court. The mediation was not successful.

## IV. FIRST CLAIM OF RELIEF

### (Negligence)

27. The Tribes incorporate by reference their prior allegations.

28. In accordance with its contract with the Tribes, Vanir had specific duties owed to the Tribes in Vanir's role as the Owner Representative for the Project.

29. Vanir failed to perform its duties and services for the Project consistent with the standard of care for an owner representative and in accordance with the terms of the parties' contract.

30. Vanir's negligent performance includes, but is not limited to, the following failures:
    a. Failure to provide all Basic Services required by the Vanir Agreement.
    b. Failure to properly administer the SBT/OBI Agreement
    c. Failure to properly manage responses to OBI's RFIs and CCPs
    d. Failure to properly respond to OBI's time extension requests
    e. Failure to properly manage FFKR Architect's design changes with OBI
    f. Failure to provide adequate management oversight/inspection during construction of the defective exterior stone veneer system.
    g. Incorrectly accepted the defective installation of the exterior stone veneer system.

31. Vanir's performance failures caused, at a minimum, 19 calendar-days of critical delay to project implementation (construction).

32. Vanir's performance failures caused the Tribes to incur additional costs, plus attorney's fees and other expenses in project implementation costs and facility operations costs (gaming revenue delay/loss).

COMPLAINT - 6

33. Vanir's negligence and breach of the applicable standard of care caused the Tribes substantial damages in an amount to be proved at trial.

## V. SECOND CLAIM OF RELIEF

### (Breach of Contract)

34. The Tribes incorporate by reference the prior allegations.

35. The Tribes and Vanir executed an agreement on or about July 14, 2015. The Tribes hired Vanir to act as the Owner Representative for the completion of the design and the construction of the Shoshone-Bannock Tribes Phase II Casino Expansion Project. The Vanir Agreement set out specific responsibilities and tasks for Vanir to perform to ensure that the Project was successfully and properly designed and built.

36. Vanir breached the July 14, 2015 Agreement, as amended, by failing to perform its contractual duties, responsibilities, and obligations set forth in the Agreement.

37. Vanir's negligent performance of its construction management and owner representative services also constitute a breach of contract.

38. The Tribes paid Vanir over two and a half million dollars ($2,500,000) to perform Owner Representative services for the Project to assist the Tribes with managing the Project's fundamental schedule, cost, and quality elements. In return, the Tribes did not receive the full value of its bargain. The Tribes incurred significant construction cost overruns and were found liable to OBI in an arbitration hearing based in large part on Vanir's negligent performance of its services.

39. The Project, which Vanir was charged to completely manage on behalf of the Tribes, ultimately cost the Tribes over $9.6 million dollars more than the initial construction bid and was delayed for over ten 10 months.

40. Vanir's breaches of the parties' contract caused substantial damages to the Tribes in an amount to be proved at trial.

## VI. THIRD CLAIM OF RELIEF

### (Indemnification)

41. The Tribes incorporate by reference the prior allegations.

42. The Vanir Agreement contains an indemnification clause. Pursuant to the indemnification clause, Vanir is contractually required to indemnify and hold the Tribes harmless for claims and disputes arising from Vanir's negligence and failure to perform under the parties' Agreement.

43. OBI asserted several claims against the Tribes in the arbitration directly stemming from Vanir's performance of services. The Arbitration Panel's Awards against the Tribes were based in large part on finding Vanir negligent in performing its services. Big-D also asserted several claims against the Tribes in the exterior stone arbitration. The exterior stone arbitration involved significant property damage to the exterior of the building.

44. The Tribes are entitled to indemnity for the exterior stone damages, the Panel's Awards and related damages and attorneys' fees in an amount to be proved at trial.

## VII. FOURTH CLAIM OF RELIEF

### (Quantum Meruit/Unjust Enrichment)

45. The Tribes incorporate by reference the prior allegations.

46. The Tribes paid Vanir over two and a half million dollars ($2,500,000) over the course of the Project.

47. Vanir failed to perform fully and caused the Tribes significant harm over the course of the Project.

48. It would be unjust for Vanir to retain all of the money paid to it by the Tribes because of Vanir's failure to perform.

## VIII. DEMAND FOR JURY TRIAL

In accordance with Section 3-1-27 of the Shoshone-Bannock Tribes Law and Order Code, the Tribes request and demand a trial by jury on all issues so triable.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court to enter a judgment in their favor on all claims against Vanir, and to award such other and further relief as the Court deems just and proper, including, but not limited to:

A. Judgment against Vanir in an amount to be proven at trial, which amount will exceed $1,500,000.00.

B. An award of costs and attorney fees incurred with respect to the commencement and prosecution of this action.

C. Prejudgment and post-judgment interest at the applicable rates.

D. Such other and further relief as the Court deems just and equitable under the circumstances.

DATED: February 27, 2023.

ECHO HAWK LAW OFFICE

_____
Paul C. Echo Hawk

Attorney for Plaintiffs

COMPLAINT - 9