Elijah M. Watkins, ISB No. 8977
elijah.watkins@stoel.com
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID 83702
Telephone: 208.389.9000
Facsimile: 208.389.9040

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHOSHONE-BANNOCK TRIBES; and FORT HALL BUSINESS COUNCIL,<br><br>Plaintiffs,<br><br>v.<br><br>VANIR CONSTRUCTION MANAGEMENT, INC.,<br><br>Defendant. | Case No. 4:23-cv-00160-REP<br><br>**DECLARATION OF MARK JOHNSON IN SUPPORT OF MOTION TO DISQUALIFY COUNSEL** |

Mark Johnson, being under penalty of perjury, deposes and says that to the best of his knowledge, the following are true and correct:

1. I am a Senior Project Manager at Vanir Construction Management, Inc. ("Vanir") and have personal knowledge of the facts set forth herein. I submit this declaration in support of Defendant's Motion to Disqualify Counsel.

DECLARATION OF MARK JOHNSON IN SUPPORT OF MOTION TO DISQUALIFY COUNSEL - 1
119169763.4 0076321-00001

2. Vanir executed an agreement (the "Contract") with the Shoshone-Bannock Tribes (the "Tribes") to provide construction management services during the construction of a casino addition to the Shoshone-Bannock Hotel and Event Center in Fort Hall, Idaho (the "Project"). A true and correct copy of the Contract is attached to this declaration as **Exhibit A**.

3. During the performance of the Contract, Vanir frequently worked with Bill Bacon, general counsel for the Tribes; Paul Echo Hawk, outside counsel for the Tribes; and Andrew Gabel, outside counsel for the Tribes (collectively, the "Lawyers").

4. During the pendency of the Project, Vanir frequently asked and received legal advice from the Lawyers.

5. For example, Vanir requested that the Tribes provide legal advice concerning letters that Vanir had received from the Tribal Employment Rights Office ("TERO") Commission. The Tribes sent the request to Mark Echo Hawk to handle any legal issues concerning communications from or with the TERO Commission. A true and correct copy of the email from Mr. Echo Hawk is attached to this declaration as **Exhibit B**.

6. Mr. Echo Hawk's law firm was regularly copied on any emails with Mark Echo Hawk. Paul Echo Hawk had visibility into the issues that OBI was facing with TERO that he would not have normally had insight into other than the relationship between Vanir and the Lawyers.

7. On or around September 6, 2016, the Tribes hired Ormond Builders, Inc. ("Ormond" or "OBI") to serve as the general contractor on the Project.

8. OBI began having issues performing under OBI's contract. The original Substantial Completion date was March 28, 2018, but OBI fell woefully behind. Ormond revised the Substantial Completion date to September 25, 2018, putting the project three months behind

schedule. The Tribes requested that OBI provide a recovery plan to get closer to schedule. OBI refused.

9. OBI had other issues as well, including quality control issues, inability to hire and maintain skilled workers, failure to provide required submittals, and other deficiencies. Given these and other issues, the Tribes began to evaluate whether they should continue to work with OBI. Ending the relationship with OBI would require terminating the contractual relationship between the Tribes and OBI, so the Tribes engaged counsel to advise on the risks of terminating the contract. To support the Lawyers, Vanir prepared a substantial preliminary report that discussed the risks and costs associated with termination as well as to provide alternative paths. Vanir had multiple conversations with the Lawyers about this analysis, and the Lawyers reviewed and revised Vanir's work product.

10. In September 2017, the Tribes hired the law firm of Lane Powell PC ("Lane Powell"), specifically Seattle partner Andrew Gabel. Mr. Gabel assisted Vanir with evaluating a large change order that OBI had submitted, and he ultimately advised on whether the Tribes should continue to work with OBI. A true and correct copy of the emails between the Lawyers and Vanir regarding Lane Powell's representation is attached to this declaration as **Exhibit C**. Once Mr. Gabel and his firm were retained, Scott Tomlinson, a Vanir employee, scheduled and participated in the initial meeting with Mr. Gabel to explain the Project and the legal issues the Tribes were facing.

11. Mr. Tomlinson was part of the process to hire Mr. Gabel to assist with litigation support. For example, Angelo Gonzales, the executive director of the Tribes, stated that he

> spoke with Scott Thomlinson [sic] about who should be the lead attorney in our Casino Project. He believes the correct process for the attorney situation going forward would be Paul E. to be the lead attorney. Mr. Andrew Gabel will assist Paul and do a lot of the preparation . . . . Mr. Gable, [sic] will consult attorneys'

DECLARATION OF MARK JOHNSON IN SUPPORT OF MOTION TO DISQUALIFY COUNSEL - 3
119169763.4 0076321-00001

Bill Bacon, Paul Echo Hawk, Owner's Rep (Vanir) and Council to move forward .
. . .

A true and correct copy of the email from Angelo Gonzales is attached to this declaration as **Exhibit D**.

12. As part of the relationship with Mr. Gabel, Vanir created an account for Lane Powell to access Vanir's documentation directly via its confidential and secure SharePoint system. A true and correct copy of the email from Mr. Tomlinson to Mr. Gabel regarding SharePoint access is attached to this declaration as **Exhibit E**.

13. In March 2018, and at the request of the Lawyers, Vanir provided the Lawyers with a preliminary review and analysis of the risks and benefits associated with terminating Ormond for its failure to cure material breaches of the contract. Vanir attended a Fort Hall Business Council meeting to provide the Lawyers with the details necessary to determine whether to issue a "cure or be terminated" letter, stay the current course with Ormand, or develop other alternatives.

14. Another example in which Vanir sought and received legal advice concerns a cease-and-desist letter from counsel. Mr. Gabel and Mr. Echo Hawk were copied on the letter because it was unclear whether they represented Vanir in the matter. Vanir sent the letter to the Lawyers and asked them for advice. A true and correct copy of the email from Mr. Tomlinson to the Lawyers regarding the cease-and-desist letter is attached to this declaration as **Exhibit F**. The Lawyers, primarily Mr. Gabel, responded to the cease-and-desist letter *on behalf of Vanir*. A true and correct copy of the letter from Mr. Gabel in response to the cease-and-desist letter is attached to this declaration as **Exhibit G**.

15. On April 3, 2018, the Tribes terminated its contract with OBI. In April 2019, the Tribes and OBI participated in an arbitration hearing over the design, construction, and contract administration of the Project. OBI alleged, among other things, that termination was wrongful and

that the Tribes breached the contract. A true and correct copy of OBI's First Amended Statement of Claims is attached to this declaration as **Exhibit H**. A true and correct copy of the Interim Award is attached to this declaration as **Exhibit I**.

16. All the communications between Vanir and the Lawyers related to the arbitration demonstrate an attorney-client relationship. Mr. Bacon requested that Vanir "marshal the evidence in support of [the Tribes'] termination for default defense and claim against Ormind [sic]." Mr. Gabel allowed Vanir to review Ormond's "Attorney's Eyes Only" documents. And nearly every email between Vanir and the Lawyers was marked with "Confidential Attorney Work Product."

17. During the Ormond arbitration, the Tribes and Vanir entered a joint defense agreement in July 2018, even though, as demonstrated, they had been routinely sharing confidential information back and forth for years. A true and correct copy of the Joint Defense Agreement is attached to this declaration as **Exhibit J**.

18. During the OBI arbitration, the Lawyers asserted attorney-client privilege over their communications with Vanir's employees because Vanir's employees were acting as the functional equivalent of a Tribal employee. A true and correct copy of the Tribes' Motion for Reconsideration is attached to this declaration as **Exhibit K**.

19. Vanir produced a significant volume of photographs and videos, which according to Mr. Gabel were "extremely valuable for the Tribes' case because it clearly documents Ormond's non-conforming work."

20. At the urging of the Lawyers, Vanir played a critical role in the defense against OBI. On at least four occasions, Vanir prepared deposition questions for several critical witnesses. Mr. Tomlinson frequently organized confidential meeting to discuss various litigation efforts,

DECLARATION OF MARK JOHNSON IN SUPPORT OF MOTION TO DISQUALIFY COUNSEL - 5
119169763.4 0076321-00001

including discovery, expert witnesses, and damages and costs analysis. Similarly, Vanir prepared and provided damages calculations associated with OBI's breach of the contract.

21. Vanir would frequently provide the first draft of work product to the Lawyers for their comments, revisions, and approval.

22. The Tribes amended the Contract on or around September 2019 ("Amendment 8"). Under Amendment 8, the Contract was amended to change the named party in the Contract from "Shoshone-Bannock Tribes" to "Shoshone Bannock Tribal Attorney's Office." A true and correct copy of Amendment 8 is attached to this declaration as **Exhibit L**. My understanding is that Bill Bacon requested the amendment. The stated reason for the change, according to one of the Lawyers, was to ensure that any communications between Vanir and the Lawyers were protected under attorney-client privilege.

23. Ultimately, the arbitration panel ruled for Ormond on three of the claims, finding that the Tribes wrongfully terminated their contract with Ormond.

24. The Tribes, through the Lawyers, then took a 180-degree spin and sued Vanir. The same Lawyers that communicated with, counseled, and advised Vanir for years are the exact same attorneys who are now suing Vanir based on the confidential information that Vanir provided to the Lawyers and based on the ramifications of the legal advice that the Lawyers provided to the Tribes.

25. During the Project and the OBI dispute, Vanir sent over a thousand emails and documents to the Lawyers. Sometimes those email communications would only be with the Lawyers—they would not include the Tribes.

26. Vanir reviewed invoices submitted by Lane Powell, Mr. Gabel's firm, that noted that the Tribes frequently worked with Vanir to prepare for depositions, exchange legal advice,

and generally prepare for arbitration. A true and correct copy of invoices from Lane Powell is included as **Exhibit M**.

27. On May 2, 2021, Mr. Tomlinson passed away.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

DATED: April 14, 2023

*/s/ Mark Johnson*
Mark Johnson

# CERTIFICATE OF SERVICE

  I hereby certify that on April 14, 2023, I served a copy of the foregoing **DECLARATION OF MARK JOHNSON IN SUPPORT OF MOTION TO DISQUALIFY COUNSEL** on CM/ECF Registered Participants as reflected on the Notice of Electronic Filing as follows:

  *paul@echohawklaw.com*

            */s/ Elijah M. Watkins*
            Elijah M. Watkins