Exhibit A

Exhibit A

## AGREEMENT BETWEEN THE SHOSHONE-BANNOCK TRIBES AND
## VANIR CONSTRUCTION MANAGEMENT, INC

THIS AGREEMENT is made by and between the Shoshone-Bannock Tribes, by and through the Fort Hall Business Council (hereinafter "Owner") and Vanir Construction Management, Inc. (hereinafter "Owner Representative"). The Owner and Owner Representative agree as set forth below:

## ARTICLE 1
## DEFINITIONS

The following words and phrases where appearing in initial capitalization shall for the purposes of this Agreement have the following meanings:

1.1 PROJECT. The Project is a Phase II Casino Addition to the Phase I Shoshone-Bannock Hotel and Event Center located at I-15 Exit 80 in Fort Hall, Idaho completed in July 2012. Phase I is a 164,000 square foot facility that includes a 156 room, five level hotel with a spa, a fitness center, a wading pool, an event center, a gift shop, a restaurant, and a deli food service. A portion of electrical, mechanical and food service infrastructure for Phase II (Casino Addition) has been constructed during Phase I. The Casino Addition structure will connect to the west side of the existing hotel, will include a porte-cochere, casino floor, back of house, bingo space, food service, a warehouse and loading dock, and addition of a service corridor and storage at the north side of the existing event center. It is estimated that the floor area of the Casino Addition will be 70,000 square feet. Construction will be contracted to a General Contractor/Construction Manager (Contractor). This Agreement covers Phase Two of the Project.

1.2 BASIC SERVICES. The Services to be performed by the Owner Representative under this Agreement shall consist of the Basic Services described in Article 3 and any Additional Services under Article 7. Unless specified in Attachment A, Basic Services, any further service required of Owner Representative shall be considered Additional Services in accordance with Article 7.

1.3 ADDITIONAL SERVICES. Additional Services shall consist of the construction program management services agreed to be performed by the Owner Representative and approved by the Owner in connection with the Project but which are not specifically set forth as Basic Services on Attachment A.

1.4 WORK. The Work shall consist of the total construction, design, and related services (excluding the Basic Services and Design Consultant services) performed on the Project.

1.5 CONSTRUCTION CONTRACT DOCUMENTS. The Construction Contract Documents shall consist of the plans and specifications prepared by the Design Consultant, and any addenda and change orders thereto, and the Owner-Contractor

agreement, all of which shall be compatible and consistent with this Agreement.

1.6    CONTRACTOR. A Contractor is any person or entity which enters into an agreement with the Owner to perform the construction of or any construction on the Project, including, without limitation, the providing of labor, materials, and equipment incorporated or to be incorporated into the Project. The term "Contractor" means the Contractor or its authorized representative, but excludes the Owner Representative and the Design Consultant.

1.7    BASIC AND ADDITIONAL SERVICES COMPENSATION. Basic Services and Additional Services Compensation shall be the cost designated in Article 4 to be paid by the Owner to the Owner Representative in connection with the performance of the Basic Service by the Owner Representative.

1.8    REIMBURSABLE EXPENSES. Reimbursable Expenses are those actual expenditures made by the Owner Representative, its employees, or its Professional Consultants in the interest of the Project including but not limited to, all out-of-pocket expenses for travel and duplicated living expenses in connection with the Project, long distance telephone, telex, expressage, and any direct labor and materials for the construction, if any, that the Owner Representative purchases on the Owner's behalf, photocopies, Professional Consultants, and document reproduction.

1.9    DESIGN CONSULTANT. A Design Consultant for the Project is any individual, corporation, partnership, or other entity selected by the Owner to prepare drawings and specifications for the construction of the Project.

1.10   OWNER-PROVIDED FACILITIES. Owner will provide Owner Representative an office space, restroom, office furniture, internet access, and related utility expenses.

### ARTICLE 2
### RELATIONSHIP OF THE PARTIES

2.1    REPRESENTATIVE OF OWNER. The Owner Representative shall be an agent of the Owner in providing the Services in accordance with the terms and conditions of this Agreement. The Owner agrees that the Owner Representative will exclusively represent Owner in dealings with the Design Consultant and the Contractor during and in connection with the performance of the Services required by this Agreement.

2.2    STANDARD OF CARE. The Owner Representative covenants with the Owner to furnish its professional skill and judgment with due care in accordance with the generally accepted standards of construction program management practice in the same or similar locality and in accordance with the federal, state and local laws and regulations which are applicable to the performance of the Services and which are in effect on the date of this Agreement. Notwithstanding any other provision to the contrary, except for the express covenant regarding the above described standard of

OWNER REPRESENTATIVE AGREEMENT (PHASE II CASINO) - 2

care, the Owner Representative neither makes, nor offers, nor shall the Owner Representative be liable to the Owner for, any express or implied warranties with respect to the performance of the Owner Representative's Services. The Owner Representative shall not be regarded as a guarantor with respect to any work product provided hereunder.

2.3　PROJECT COMMUNICATION. The Owner shall cause all agreements between the Owner and Design Consultant and the Owner and the Contractor to provide that all communications, whether written or oral, by, among, or between any two or more of the Owner, the Design Consultant, and the Contractor in connection with the Project shall be communicated through the Owner Representative.

2.4　RELATIONSHIP OF THE PARTIES.

2.4.1　In providing Services, the Owner Representative shall maintain a working relationship with the Contractor and Design Consultant on behalf of the Owner. However, nothing in this Agreement shall be construed to mean that the Owner Representative supplants or assumes any of the Contractor's or the Design Consultant's contractual or customarily assumed responsibilities. The Owner Representative shall not be responsible for: construction means, methods, sequences or procedures utilized by the Contractor or the Contractor's failure to carry out the Work in accordance with the Construction Contract Documents; safety or security in connection with the Project or the performance of the Work; inspection of the Work on the Project; acts or omissions of the Design Consultant; or adequacy or accuracy of any part or all of the Project design.

2.4.2　Owner Representative shall provide the Services as an independent contractor, and as such, Owner Representative shall receive no insurance, retirement options, paid vacation, paid sick leave or other employee benefits.

2.4.3　Both parties to this Agreement recognize that performance under the agreement(s) between the Owner and the Contractor, the Owner and the Design Consultant, or Owner and any other third party is solely the responsibility of the individual Contractor, Design Consultant, or third party; consequently, nothing in this Agreement shall be construed to mean that said performance or lack thereof by Owner, Contractor and/or Design Consultant, or any third party, is in any way to be considered the responsibility of the Owner Representative.

2.5　SUBSTITUTION OF PERSONNEL. The Owner Representative and the Owner each respectively reserve the right to substitute their personnel for the purpose of carrying out their respective responsibilities under this Agreement. However, changes of personnel of the Owner Representative, including the Project Director, Construction Manager, and Construction Casino Expert shall not be made without the prior express written approval of the Owner, which will not be unreasonably withheld.

## ARTICLE 3
## BASIC SERVICES

3.1     The Owner Representative shall perform the Basic Services set forth in Attachment A. The Basic Services shall be performed under and in accordance with this Agreement and the Project Documents.

## ARTICLE 4
## COMPENSATION

4.1     BASIC SERVICES COMPENSATION. The Owner shall pay the Owner Representative the Basic Services Compensation in accordance with the terms and conditions of this Agreement as follows:

4.1.1   The Services Compensation to be paid the Owner Representative shall be based on:

   .1     For personnel assigned to and consultants retained by the Project by the Owner Representative an amount computed by multiplying the number of hours spent in performing the Basic Services times the applicable Hourly Billing Rate for the personnel, as set forth in Attachment B incorporated herein.

4.1.2   REIMBURSABLE EXPENSES. The Owner Representative shall be compensated for actual Reimbursable Expenses. Reimbursable Expenses are in addition to Basic Services Compensation and Additional Services Compensation. Reimbursable Expenses shall be invoiced with copies of receipts to the Owner at the amount billed to or incurred by the Owner Representative. Reimbursable Expenses are set forth and limited to those in Attachment B incorporated herein.

4.1.3   INVOICES. The Owner Representative may submit monthly invoices to the Owner for payment of the Basic Services Compensation and Reimbursable Expenses.

4.1.4   PAYMENT. The Owner shall pay all approved amounts invoiced to it pursuant to this Article 4 within thirty (30) days after receipt of an approved invoice.

4.2     CESSATION OR SUSPENSION OF SERVICES.

4.2.1   In the event any invoice submitted by the Owner Representative for Services rendered is not paid within sixty (60) days after receipt of the invoice, the Owner Representative shall have the right to cease or suspend all performance required under this Agreement until all outstanding invoices from the Owner Representative to the Owner are paid in full. Notwithstanding anything herein to the contrary, such cessation or suspension of Services by the Owner Representative shall not be deemed a breach of this Agreement in whole or in part or the fault of the Owner Representative. The decision by the Owner Representative not to cease or suspend performance if there is a non-payment

shall not constitute a waiver of its right to stop work as long as a non-payment condition exists.

4.2.2   If the Owner Representative ceases or suspends performance for non-payment under this paragraph 4.2, the Owner Representative shall not be liable to the Owner or to any third party for, and the Owner agrees to indemnify and hold the Owner Representative harmless against, any increase in construction or other costs, for delay in the time for completion of the Project, or for any other adverse consequences, claims, liabilities or expenses (including without limitation reasonable attorney's fees and court costs) which may arise due to the exercise of this right to cease or suspend performance.

4.3   OWNER REPRESENTATIVE'S ACCOUNTING RECORDS. Records of the Owner Representative's payroll, consultant and Reimbursable Expenses pertaining to the Project shall be kept on the basis of generally accepted accounting principles and shall be available to the Owner or the Owner's representative at mutually convenient times for a period from the date of this Agreement to two (2) years after issuance of the Certificate of Final Completion, or two (2) years after the Services are completed or terminated, whichever is earlier.

After completion of the Services, all monies due and owing to Owner Representative in accordance with this Agreement shall be paid to Owner Representative promptly after the following conditions shall have been met and the following requirements complied with if requested by the Owner:

(a)   Satisfactory evidence shall have been furnished to Owner by Owner Representative of the payment of all bills and debts of labor and materials arising of or in connection with the Services;

(b)   Satisfactory evidence shall have been furnished to Owner by Owner Representative of the settlement and discharge of all Claims which Owner Representative is obligated to discharge; and

(c)   A Lien Waiver shall have been executed by Owner Representative and delivered to Owner, which instrument duly and legally releases Owner and its agencies from any and all Claims which Owner Representative then has or may claim in connection with, on account of, and/or arising out of this Agreement, and/or performance of Services, except for any retention which the Owner may hold under the provisions of this Agreement.

Payment otherwise due by Owner to Owner Representative may be withheld by Owner without payment of interest, on account of inadequate Services not remedied by Construction Project Manager, unpaid labor or material bills, or unpaid Claims for which Owner Representative is responsible under this Agreement, or upon reasonable evidence indicating that unpaid bills or Claims are outstanding.

## ARTICLE 5
## DURATION OF BASIC SERVICES

5.1 TOTAL DURATION OF BASIC SERVICES. The duration of Basic Services under this Agreement shall commence on May 15, 2015 and end on February 11, 2017. Any services to be provided after February 11, 2017 must be approved by contract amendment. The February 11, 2017 date may be extended by Owner for the number of days necessary to obtain financing or for any other internal reason needed for support or approval of the Project.

5.1.1 Commencement of Basic Services shall be at the time of execution of this Agreement by the Owner or upon the issuance to the Owner Representative of a letter of intent with instruction from the Owner to commence with the Basic Services, whichever is earlier.

5.2 The duration of Basic Services set forth in this Article 5 may be extended as mutually agreed.

5.3 Time is of the essence of this Agreement.


## ARTICLE 6
## OWNER'S RESPONSIBILITIES

6.1 OWNER'S REQUIREMENTS. The Owner shall provide to the Owner Representative full information regarding the Owner's requirements for the Project.

6.2 OWNER'S DECISIONS. The Owner shall examine information submitted by the Owner Representative and shall render decisions pertaining thereto.

6.3 INFORMATION, SURVEYS, REPORTS. The Owner shall furnish full site information, surveyor services, and structural, mechanical, chemical, electrical, conductivity, and other laboratory tests, inspections, and reports as requested by the Owner Representative, as required by law, or as may be necessary to assist the Owner Representative in the performance of the Services contemplated by this Agreement. The Owner Representative shall be entitled to rely upon the accuracy, timeliness and completeness of information, surveys, tests, and reports furnished by the Owner, its Design Consultant, other consultants and the Contractor.

6.4 NOTICE OF FAULT OR DEFECT. If the Owner observes or otherwise becomes aware of any fault or defect in the Project or nonconformance with the Construction Contract Documents, prompt written notice thereof shall be given to the Owner Representative. Any failure by the Owner to enforce or require strict keeping and performance of any of the terms or conditions of this Agreement shall not constitute a waiver of the right to enforce or require the strict keeping or such terms and conditions

and shall not affect or impair such terms and conditions in any way or the right of the Owner at any time to avail itself of such remedies as it may have for any subsequent breach or breaches of any such terms or conditions or of any term or conditions of this Agreement including, without limitation, the right to terminate.

In the event of termination by the Owner of Owner Representative's performance under this Agreement for convenience or for Owner Representative's default, no rights or remedies of the Owner shall thereby be waived, nor shall any breach by Owner Representative's of the covenants of this Agreement which has occurred and its continuing at the time of such termination be waived, whether or not default has been declared, but rather, any such termination shall be without prejudice to all rights and remedies of Owner which would otherwise be available.

6.5     OWNER INFORMATION AND APPROVALS. The Owner shall furnish required information and approvals as expeditiously as necessary for orderly progress of the work and shall adhere with the time conditions for such owner activities as set out in all approved schedules for the project.

6.6     DESIGN CONSULTANT AGREEMENT. The Owner shall retain and contract separately with the Design Consultant, for design services which are described in the agreement between the Owner and the Design Consultant. The Owner shall cause all agreements between the Owner and the Design Consultant to be compatible and consistent with this Agreement and shall expressly recognize the Owner Representative as the Owner's agent in providing the Services under this Agreement. The terms and conditions of the Owner-Design Consultant's agreement will not be modified to the extent that such modification would affect the liability or the performance of the Services of the Owner Representative without prior written consent of the Owner Representative, which consent will not be unreasonably withheld.

6.7     PROJECT BUDGET. The Owner shall approve an initial budget, and any subsequent revisions, for the Project based on consultation with the Owner Representative. Such budgets and revisions shall include contingencies for Owner directed changes and unforeseen conditions during design and construction as well as other costs that are the responsibility of the Owner.

6.8     CONTRACTOR AGREEMENT. The Owner shall contract separately with the Contractor for the construction of the Project. The Owner shall cause all agreements between the Owner and the Contractor to be compatible and consistent with this Agreement, and such agreements shall recognize the Owner Representative as the Owner's agent in providing the Services under this Agreement and shall in addition to other provisions require the Contractor to complete the Project within the time and contract amount stated in such agreements. The terms and conditions of the Owner-Contractor's agreement will not be modified without prior written consent of the Owner Representative, which consent will not be unreasonably withheld.

6.9     CONSTRUCTION CONTRACT DOCUMENTS. The Owner will furnish to the Owner Representative sufficient copies of Construction Contract Documents at the Owner's expense.

6.10    PROJECT COMMUNICATION. The Owner or the Owner's Construction Manager shall communicate with the Contractor and the Design Consultant only through the Owner Representative. The Owner shall send and shall require the Design Consultant to send copies of all notices and communications sent to or received by the Owner or the Design Consultant relating to the Work to the Owner Representative. During the Construction Phase of the Project, the Owner shall require that the Contractor submit all notices and communications relating to the Work directly to the Owner Representative.

6.11    PROJECT MANAGER. . The Owner shall designate an officer or employee to act in the Owner's behalf with respect to the Project. The Owner's Construction Manager for the Project is Marlin Fellows. He shall have the authority to approve changes in the scope of the Project and shall be available during working hours as often as may be necessary to examine information submitted by the Owner Representative, to render decisions and to furnish information in a timely manner.

## ARTICLE 7
## CHANGES IN SERVICES AND PROJECT

7.1     ADDITIONAL SERVICES. Owner Representative shall perform Additional Services upon mutual consent of the Owner and Owner Representative and upon written authorization to proceed from the Owner. Such Additional Services shall be paid for in accordance with this Agreement. Compensation shall be based on Time Spent basis plus Reimbursable expenses, unless otherwise mutually agreed.

7.2     PAYMENT FOR SERVICES UNDER THIS ARTICLE. The Owner Representative shall submit invoices for the Additional Services Compensation, Reimbursable Expenses, and Professional Consultants' fees and expenses that shall be paid pursuant to the provisions of Article 4 of this Agreement.

7.3     CHANGES NOT WITHIN GENERAL SCOPE OF PROJECT. Should the Owner make changes to the Project which are not within the general scope of the Project, the Owner Representative shall not be required thereafter to perform Basic Services hereunder unless the Owner Representative otherwise agrees in writing to do so. In such an event, the Agreement shall be deemed terminated for the convenience of the Owner pursuant to paragraph 11.1.

## ARTICLE 8
## NOTICES

8.1     NOTICES. Any notice required by this Agreement to either party by the other shall be

in writing and deemed given when delivered personally or five days after deposit in the United States Post Office, as postage prepaid certified mail, return receipt requested, addressed as follows, or to such other address as shall be duly given by notice meeting the requirement of this Article.

To Owner:

Steve Hagler, Tribal CFO
Shoshone-Bannock Tribes
P.O. Box 306
Fort Hall, Idaho 83203

shagler@sbtribes.com

To Owner Representative:

Joseph A. Mehula,
Vanir Construction Management, Inc.
4540 Duckhorn Drive, Suite 300
Sacramento, California 95834

guy.mehula@vanir.com.

Copy to:
Scott Tomlinson, CCM
Vanir Construction Management, Inc.
10900 NE 8th Street, Suite 1486
Bellevue, WA 98004-4454

scott.tomlinson@vanir.com

A copy of all notices shall be also be contemporaneously provided by email to the above email addresses.

## ARTICLE 9
## INDEMNIFICATION

9.1    The Owner's Representative hereby agrees to indemnify and hold harmless the Owner and its employees from and against any and all claims, demand, suits, and damages for bodily injury and property damage for which the Owner's Representative is liable that arise out of the solely negligent acts or omissions of the Owner's Representative in performing the construction manager's services under this Agreement provided, however, that the Owner's Representative does not assume any risk of damages to property that is incorporated in or shall be incorporated in or is located at the project site which is not within the possession of the Owner's Representative or under the Owner's Representative's direction or control.

9.2    The Owner hereby agrees to indemnify and hold harmless the Owner's Representative, its employees and subcontractors from and against any and all claims, demands, suits,

and damages for bodily injury and property damage that arise out of or result from, in whole or in part, wrongful acts or omissions of the Owner, its employees, agents, representatives, independent contractors, material suppliers, the contractors, and design professional.

9.3    The Owner shall cause all Project contractors and design professionals ("Owner Consultants") to defend, indemnify, and hold harmless the Owner and Owner's Representative from and against any and all claims, liabilities, demands, suits, damages, and expenses (including attorney's fees and litigation costs) arising out of or in any way relating to the performance by each of the owner consultants of their respective agreements for services rendered on the project, including but not limited to claims for personal injury, property damage and/or professional errors and omissions.

9.4    Owner Representative shall promptly settle, or cause the settlement of, all Claims for which it is responsible pursuant to this Agreement. Upon receipt of any Claim, Owner Representative shall immediately notify Owner of the full particulars thereof, and Owner may elect, by notice to Design Consultant, to have its representative accompany Owner Representative's representative in making settlement of the same. If any statute or rule of law should be held to render void, voidable, or unenforceable any indemnity clause or clauses in favor of one or more of Owner, its agencies or employees, then and in only such event, such indemnify clause or clauses shall be limited, read, construed, and enforced as to such party with respect to the provision or provisions which are held to violate the statute or rule of law to require indemnity by Owner Representative to Owner, it agencies or employees to the fullest extent permitted by the terms and conditions of such indemnity provision and permitted by such statute or rule of law.

9.5    Owner Representative shall include in each of it subcontracts with its subcontractors or consultants of every tier provisions the same in all material respects as those contained in this Article. Such provisions shall benefit Owner, it agencies, employees and such other parties upon whom Owner Representative and such subcontractors may agree.

9.6    CONTRACTOR' S AND DESIGN CONSULTANT' S INDEMNITY. The Owner shall cause any Contractor and Design Consultant who may have a contract with the Owner to perform construction or installation work or design services in the areas where Services will be performed under this Agreement to indemnify the Owner and the Owner Representative, their employees, agents, servants and representatives, and hold them harmless and defend them from all claims, suits or causes of action for bodily injury and property damage (including incidental and consequential damages) and expenses (including expenses of litigation and reasonable attorneys' fees) that may arise, with respect to the Contractor, from the Contractor's operations and/or performance of Contractor's contractual and legal responsibilities and duties for safety and security on the Project and, with respect to the Design Consultant, from any matters relating to the design and services performed by the Design Consultant on the Project. Such provisions shall be in a form satisfactory to the Owner Representative.

9.7    ACTS AND OMISSIONS. The Owner Representative shall not be responsible for the acts or omissions of the Owner, any Contractor, or any subcontractor, any Design Consultant, or their agents or employees, or any other persons performing any of the Work.

9.8    EXCUSABLE DELAY. The Owner Representative and the Owner shall not be liable to each other for any delays in the performance of their obligations and responsibilities occurring beyond their reasonable controls and/or without their fault or negligence, including but not limited to, any of the following events or occurrences: fire, flood, earthquake, epidemic, atmospheric condition of unusual severity, archeological finds, war, and strikes. However, in the event of any such delays, the duration of this Agreement under Article 5 shall be extended by a period of time corresponding with the period for which the Work was delayed and the Owner Representative shall be entitled to receive Additional Services Compensation in accordance with paragraph 7.2.

9.9    SURVIVAL OF INDEMNITIES. These agreements of indemnity shall survive expiration or termination of this Agreement.

### ARTICLE 10
### COMPLIANCE WITH LAWS, REGULATIONS, AND SAFETY

10.1    Owner Representative and Owner covenant, so long as this Agreement is in force and effect, to comply with all laws, statutes, ordinances, and regulations applicable to the performance of this Agreement, as amended from time to time, and any and all rules, regulations, orders, plans, and specifications of any federal, Tribal or other authority having jurisdiction with respect to the Services to be provided hereunder, from time to time in force.

10.2    Owner Representative is now, or prior to commencing the Services shall become familiar with, and shall comply with, all Owner's safety regulations and with the Legal Requirements that relate to or affect the conduct of the Services. Owner Representative shall obtain all permits, licenses, certificates and other authorizations required for the Services and shall require its subcontractors of every tier to at all times observe and comply with the safety regulations and the Legal Requirements. Owner Representative shall comply with the Shoshone-Bannock Tribes Tribal Employment Rights Ordinance (TERO) Ordinance #08-S1, TERO Regulations, and the TERO Worker Protection Ordinance, including payment of TERO Fee and Training Fees.

10.3    Owner Representative states that the prices charged under this Agreement are not in violation of Legal Requirements and include those licenses and fees and other items that are attributable directly to the Services. This provision shall not excuse Owner Representative from its responsibilities to pay all taxes and charges due on account of Owner Representative's operations and obligations.

## ARTICLE 11
## OWNER'S RIGHT TO AUDIT

11.1 Owner shall be entitled from time to time during the performance of the Services and for a period of two (2) years after final acceptance of the Work to audit the books and records so maintained to verify charges based on unit prices or rates. If an audit by the Owner reveals charges or costs charged to or paid by the Owner which are not proper or exceed the rates or amounts permitted under the Agreement for any of such matters, then the Owner shall be entitled upon demand to a refund from Owner Representative of all such amounts, plus interest thereon from the date of payment by the Owner until the date of refund by Owner Representative at the rate of the lesser of (i) eighteen percent (18%) per annum or (ii) the maximum rate allowed by law. Any audit will be performed at the Bellevue office of Owner Representative and at a mutually agreeable time.

## ARTICLE 12
## DEFAULT

12.1 If a petition in bankruptcy is filed by or against Owner Representative, or if Owner Representative makes a general assignment for the benefit of creditors, or if a receiver is appointed on account of the insolvency of the Project or to take charge of the Services of any part thereof, then Owner Representative shall be in default under this Agreement and such action shall be grounds for termination of the Agreement.

12.2 If Owner Representative fails or refuses to perform its obligations under this Agreement , and such failure, refusal, or breach continues for an unreasonable period of time, Owner may declare Owner Representative in default under this Agreement and may employ any remedies provided for in this Agreement or otherwise available at law or in equity.

12.3 If Owner Representative shall be or be declared in default under this Agreement, then Owner, at its sole election and discretion, without prejudice to any other right or remedy available to it, without further notice to Owner Representative, may terminate the performance of Owner Representative under this Agreement and take responsibility for continuation of the Services. In such event Owner may finish the Services by whatever method Owner may deem expedient.

12.4 The remedies provided in this Article shall be cumulative of and not in lieu of all other remedies provided for in this Agreement or otherwise available to Owner at law or in equity. Should Owner elect to terminate the performance of Owner Representative hereunder then such termination shall not waive, extinguish, or otherwise affect the obligations and liabilities of the parties existing as of termination.

## ARTICLE 13
## TERMINATION AND SUSPENSION

13.1 TERMINATION. This Agreement may be terminated by the Owner upon thirty (30) days written notice in the event: 1) the Owner Representative fails to substantially perform in accordance with the terms hereof; 2) financing for the project is not secured; 3) Owner does not enter a contract with a General Contractor; 4) if the Project in whole or substantial part is abandoned or stopped for a period of sixty (60) or more days under an order of any court or other public authority having jurisdiction; 5) or any other reason Owner deems appropriate for termination.

13.1.1 In the event of such termination under paragraph 13.1, the Owner Representative shall be paid its compensation for Services performed to the date of termination notice or abandonment, including Reimbursable Expenses, and services of professional consultants then due.

13.2 SUSPENSION. The Owner may order the Owner Representative in writing to suspend, delay, or interrupt all or any part of the Work on the Project for the convenience of the Owner, or because of events beyond the control of the Owner or the Owner Representative.

13.2.1 In the event the Work on the Project is suspended, delayed, or interrupted, the Owner for the first ten (10) working days of such suspension, delay, or interruption shall pay the Owner Representative on a time spent basis deemed to consist of eight hours a day for each of the Owner Representative's construction site personnel involved in the Project immediately prior to such suspension, delay, or interruption multiplied times the applicable hourly rate for such personnel set forth on Attachment B, plus Reimbursable Expenses and professional consultant's fees and expenses. Such amounts shall be invoiced to the Owner and paid by the Owner pursuant to the provisions of Article 4 of the Agreement. On or before ten (10) days, the Owner Representative shall reduce the size of such staff for the remainder of the period of suspension, delay, or interruption as directed by the Owner; and during such period, the Owner shall pay the Owner Representative for such reduced staff in the same manner as provided above in this paragraph 13.2.1. Upon the termination of the suspension, delay, or interruption, the Owner Representative shall restore construction site personnel and office personnel to its former size as quickly as is reasonably feasible.

13.2.2 Personnel assigned to another project during such period and not available to return to the Project upon the termination of the suspension, delay, or interruption shall be replaced by new personnel approved by the Owner.

13.3 EFFECT OF DELAY OR SUSPENSION. A suspension, delay, or interruption of the Work on the Project shall not terminate nor void this Agreement.

## ARTICLE 14
## DISPUTE RESOLUTION

14.1    In the event of any dispute under this Agreement, the Owner and Owner Representative agree to initially submit such dispute to non-binding mediation in an effort to resolve the same with each party bearing its own mediation expenses and equally sharing costs of the mediator. In the event that formal legal proceedings are commenced in connection with this Agreement, the parties agree that the Shoshone-Bannock Tribal Court shall be the sole, proper, and exclusive forum and venue for such proceedings.

14.2    Tribal Sovereign Immunity. Neither the execution of this Agreement, nor any provision contained herein shall be interpreted to act as a waiver of the Shoshone-Bannock Tribes' sovereign immunity. The Shoshone-Bannock Tribes hereby specifically reserves and retains its sovereign immunity and any rights appurtenant thereto.

14.3    Tribal Laws Apply. The parties hereto further agree the laws of the Shoshone-Bannock Tribes shall apply and any disputes will be filed in the Tribal Court of the Shoshone-Bannock Tribes. The parties further agree the Shoshone-Bannock Tribes Tribal Courts will have exclusive jurisdiction over any and all disputes regarding this agreement.

## ARTICLE 15
## SUCCESSORS/ASSIGNMENT/THIRD PARTIES

15.1    SUCCESSORS. This Agreement shall inure to the benefit of and be binding on the heirs, successors, permitted assigns, trustees and personal representatives of the Owner, as well as the permitted assigns and trustees of the Owner Representative.

15.2    ASSIGNMENT. Neither the Owner nor the Owner Representative shall assign, sublet, or transfer its interest in this Agreement or any claims arising out of this Agreement without the written consent of the other.

15.3    THIRD PARTIES. This Agreement is not intended to create nor shall it be construed as creating any contractual relationship or obligations between the Owner Representative and any third party, including but not limited to the Design Consultant and the Contractor. Nothing contained in this Agreement, nor the performance of the parties hereunder shall inure to the benefit of any third party. The Owner shall include in any other contracts with other parties concerning the Project, a provision whereby such other contracting party acknowledges that neither this Agreement, in whole or in part, nor the performance of the parties hereunder, shall inure to that contracting party's benefit.

## ARTICLE 16
## CERTIFICATES FOR PAYMENT TO THE CONTRACTOR

16.1 CERTIFICATE FOR PAYMENT. Based upon observations at the site and upon the Contractor's applications for payment, the Owner Representative shall confirm the amount owing to the Contractor pursuant to the terms of the Owner-Contractor Agreement. The Owner Representative shall consult with the Design Consultant in the determination of the amount due the Contractor. The Owner Representative and the Design Consultant shall sign the certificate for payment prior to the time the Owner Representative transmits it to the Owner.

The signing of a certificate for payment by the Owner Representative shall constitute a representation by the Owner Representative to the Owner that based on the Owner Representative's observations at the site pursuant to this Agreement, the data comprising the application for payment, and information supplied by the Design Consultant, the Work has progressed to the point indicated and that to the best of the Owner Representative's knowledge, information, and belief, the quality of the Work appears to be in accordance with the Construction Contract Documents (subject to an evaluation of the Work for conformance with the Construction Contract Documents upon Substantial Completion, the results of any subsequent tests required by or performed under the Construction Contract Documents, minor deviations from the Construction Contract Documents correctable prior to completion, and any specific qualifications stated in the certificate for payment), and that the Construction Contractor is entitled to payment in the amount certified. However, by signing a certificate for payment, the Owner Representative shall not thereby be deemed to represent that the Owner Representative has made exhaustive or continuous on-site inspections to check the quality or quantity of the Work or that the Owner Representative has reviewed the construction means, methods, techniques, sequences, or procedures, or that the Owner Representative has made any examination to ascertain how and for what purpose the Contractor has used the monies paid on account of the construction contract sum.

## ARTICLE 17
## ADDITIONAL PROVISIONS

17.1 CONFIDENTIALITY. In order for the Owner Representative to effectively provide the Services required under this Agreement, it may be necessary or desirable for the Owner to disclose to the Owner Representative confidential and proprietary information and trade secrets pertaining to the Owner's past, present, and future activities. The Owner Representative hereby agrees to treat information that has been designated to the Owner Representative by the Owner in writing as being confidential and proprietary information or trade secrets in a confidential manner. The Owner Representative further agrees that it will not disclose any such information so designated to anyone outside of the Owner during the period of this Agreement or thereafter without the prior consent of the Owner.

OWNER REPRESENTATIVE AGREEMENT (PHASE II CASINO) - 15

17.2 DOCUMENTS AND RECORDS. Upon termination or expiration of this Agreement, the Owner Representative shall, upon written request from the Owner, return to the Owner all documents and records provided by the Owner which are in the Owner Representative's possession or control. However, the Owner Representative shall be allowed to make copies of all such documents, records, information and material at the Owner Representative's expense. Additionally, at the Owner's request, the Owner Representative shall at the Owner's expense make copies of all project files maintained by the Owner Representative for the Owner.

17.3 GOVERNING LAW. Unless otherwise specified this Agreement shall be governed by the laws of the Shoshone-Bannock Tribes.

17.4 ENTIRE AGREEMENT. This Agreement represents the entire and integrated agreement between the Owner and the Owner Representative and supersedes all prior negotiations, representations, or agreements, either written or oral.

17.5 MODIFICATION OF AGREEMENT. This Agreement may be amended only by written separate instrument signed by both the Owner and the Owner Representative.

17.6 SEVERABILITY. If any one or more of the provisions contained in this Agreement, for any reason, are held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions thereof and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

17.7 HEADINGS. The headings or captions within this Agreement shall be deemed set forth in the manner presented for the purposes of reference only and shall not control or otherwise affect the information set forth therein or interpretation.

17.8 INTERPRETATION OF CERTAIN WORDS. For the purpose of this Agreement unless the context clearly indicates otherwise, the singular includes the plural, and the plural includes the singular.

17.9 COUNTERPARTS. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and the counterparts shall constitute one and the same instrument, which shall be sufficient evidence by any one thereof.

17.10 CONFLICT AMONG CONTRACTS. In the event of any conflict between the terms and provisions of this Agreement and the Owner-Design Consultant's agreement and/or the Owner-Contractor agreement, the terms and provisions of this Agreement shall control.

This Agreement executed the day and year first written above.

SHOSHONE-BANNOCK TRIBES

VANIR CONSTRUCTION MANAGEMENT, INC.

By: _____

Date: _____

By: _____

JOSEPH A. MEHULA, President

Date: 7-8-15

# ATTACHMENT A

## Basic Services
### for
### Phase II Casino Addition Project

Owner Representative Services will entail pre-construction, construction, and post construction phase management. Vanir Construction Management (VCM) will perform their contract under the direction of the Shoshone-Bannock Tribes (SBT) Chief Financial Officer. VCM will be the Project primary Point of Contact to the Fort Hall Business Council, Tribal Employment Rights Office (TERO), Tribal Occupational Safety and Health Administration (TOSHA) and the Shoshone-Bannock Tribes Land Use Building Department. A critical element of VCM services will be issue resolution between Contractors and the SBT TERO, TOSHA, and the SBT Land Use Building Department. It is also understood that VCM and the SBT will work collaboratively to provide the Basic Services and required deliverables. This support will entail but not be limited to legal support by Mr. Paul C. Echo Hawk (Attorney) on the Frontend Documents, project and construction management support by the SBT's Project Manager Mr. Marlin Fellows, CCM, administrative and construction management support by a qualified Office Engineer (TBD), and Inspection staff (TBD). The scope of services is as follows:

## 1. Pre-Construction

1.1 Planning: VCM shall develop project goals, review the Design Consultant's estimates, provide an overall project budget, prepare a project master schedule, and meet with the TERO Office to develop a project specific plan for TERO compliance in contracting and employment.

1.2 Project Management Plan: VCM shall prepare a Project Management Plan to define roles and responsibilities, communication protocol, compliance with Tribal law, a project delivery plan, and integration of other consultants and Owner Contractors.

1.3 Construction Management Plan: VCM shall establish and implement procedures for expediting and processing requests for information, shop drawings, material and equipment sample submittals, contract schedule adjustments, change orders, substitutes, and payment requests and the maintenance of Logs for tracking all relevant information related to the above.

1.4 Design: VCM shall take the lead role in representing the Owner during the design process. VCM shall attend design meetings, review the design in phases as submitted by the Design Consultant, assist with constructability and value engineering reviews at appropriate design phases working in conjunction with the Design Consultant and Contractor, submit Construction Documents to the Land Use Building Department for building code plan review, monitor the Design Consultant's work progress, and review and provide recommendation for the Design Consultants monthly invoices.

1.5 Front End Documents: VCM shall prepare Division 0 documents of the project manual, working in conjunction with Tribal staff and the Tribes Attorney Office.

1.6 Quality Assurance Plan: VCM shall prepare a Quality Assurance plan defining the approach to be used to in overseeing the contractor's Quality Control responsibilities.

1.7 General Contractor/Construction Manager Procurement: VCM shall prepare and distribute solicitation for Contractors.

1.8 Pre-bid Conference: VCM shall coordinate and participate in a Pre-Bid Conference with the Owner and Design Consultant to explain the Project requirements to bidders including information concerning schedule requirements, time and cost control requirements, access requirements, TERO requirements, Tribal law requirements, and other information.

1.9 Proposal Review, Interviews and Recommendations: VCM shall receive General Contractor/Construction Manager proposals and shall evaluate the proposals for responsiveness, completeness, cost, quality of the Contractors, and assist in researching Contractor's references. VCM shall coordinate and take the lead role in interviews with the Contractors and make recommendations to the Owner concerning the selection of the Contractor. VCM shall assist the Owner in Contractor negotiations, and with development and execution of the contract. VCM shall prepare Notice of Award and Notice to Proceed documents for Owner signature.

## 2. Construction

2.1 Pre-construction Conference: VCM shall conduct a Pre-construction Conference during which VCM shall review the project organization, communication protocols, security, responsibilities, Tribal law as it applies to the project, and other general project procedures.

2.2 Progress Reports: VCM shall submit written, monthly, progress reports to the Owner and Design Consultant including information on each Contractor and each Contractor's work, as well as the entire project, showing percentages of completion and the number and amounts of change orders. Keep a daily log and daily reports containing a record of weather, work on the site, number of workers, work accomplished, problems encountered, and other similar relevant data as the Owner may require. Make the log available to the Owner and the Design Consultant.

2.3 On-Site and Off-Site Management and Construction Administration: VCM shall establish and implement communication procedures among VCM, Owner, Design Consultant, and Contractors. As the Owners representative at the site, CM shall be the party to whom requests for information, submittals, Contractor schedule adjustments, change order requests, and payment applications shall be submitted. The onsite Owner Representative will not exceed forty (40) hours per week in services without the prior written authorization of the Owner. All offsite services, with the exception of the services of the Project Director, will require a work order identifying the personnel executing the services and containing the estimated hours for the services, that will be submitted by VCM and approved by the Owner prior to the services commencing.

2.4 Project Site Meeting: VCM shall attend and represent the interest of the Owner at weekly video meetings and at monthly Owner/Design Consultant/Contractor meetings.

2.5 Inspections: VCM and the Design Consultant shall monitor the quality of the construction to guard the Owner against defects and deficiency in the work of the Contractor. VCM may reject work and transmit to the Owner and Contractor a notice of nonconforming work when it is the opinion of VCM, Owner, or Design Consultant that the Work does not conform to the requirements of the Contract Documents. No action taken by VCM shall relieve any or all of the Contractors from their obligation to perform their work in strict conformity with the Contract Documents and in strict conformity with all other applicable laws, rules and regulations. Communication between VCM and Contractor with regard to inspection shall not in any way be construed as binding VCM or Owner as releasing the Contractor from the fulfillment of any of the terms of

his Contract Documents.

2.6 Contractors Safety Program: VCM shall verify that each contractor, as required by their contract documents, submits safety programs to TOSHA. VCM shall not be responsible for Contractor implementation of or compliance with the Contractor Safety Programs. VCM has no responsibility for approval of safety programs; the approval of safety programs is under the authority of TOSHA.

2.7 Review of Requests for Changes to Contract Time and Price: VCM shall review the contents of requests for changes to the contract time or price submitted by a Contractor, assemble information concerning the request and endeavor to determine the cause of the requests and make recommendations to the Owner with respect to acceptance of the requests. VCM will implement the Owner's decisions regarding all requests for changes. All changes to the Agreement between the Owner and Contractor shall be only by change orders executed by the Owner.

2.8 Record Drawings, Operation, and Maintenance Materials: As required by the Contract Documents, VCM shall receive from the Contractor As-Built record drawings, operation and maintenance manuals, warranties and guarantees for materials and equipment installed on the Project, and review such documents for completeness and submit documents to the Design Consultant.

2.9 Substantial Completion: In consultation with the Design Consultant and Owner's inspector, VCM shall review the contractor's request for substantial completion and final completion and recommend to the Owner when the Project and the Contractor's Work has achieved substantial completion and when the Work is completed and ready for final acceptance.

2.10 Construction Schedule: Consistent with the Project Construction Schedule, and utilizing schedule information provided by the Contractor, review and comment on the detailed Project Construction Schedule for activity sequences and durations, allocation of labor and materials, processing of Shop Drawings, Product Data and Samples, and delivery of products requiring long lead time procurement for the entire scope of work of the Contractor. Subsequently review the updated the Project Construction Schedule on a monthly basis, or more often as may be required. Proactively coordinate with the Contractor to maintain the Project Construction Schedule. VCM shall advise and make recommendations to the Owner concerning the alternative courses of action that the Owner may take in its efforts to achieve contract compliance by the Contractor.

2.11 VCM Review of Time Extensions: Prior to issuance of change orders, VCM shall advise the Owner as the effect on the schedule of time extension requested by the Contractor.

2.12 Recovery Schedules: VCM shall review the recovery schedule, if applicable, submitted by the Contractor for compliance with the Contract Documents.

2.13 Change Order Control: VCM shall establish and implement a change order control system. All proposed change orders shall first be described in detail by VCM, with the assistance of the Design Consultant when necessary, in a request for proposal to the Contractor, and, when needed, shall be accompanied by technical drawings and specifications prepared by the Design Consultant. In response to the request for a proposal, the Contractor shall submit to VCM for evaluation detailed information concerning the cost and time adjustments, if any, as may be necessary to perform the proposed change work order. VCM shall discuss the proposed change order with the Contractor and endeavor to determine the Contractor's basis of the cost and time impacts of performing the work. VCM shall make recommendations to the Owner of whether VCM believes the change in the work is in the best interest of the project, prior to the Owner's

execution of change orders. VCM shall verify that change order work and adjustments of time, if any, required by approved change orders have been incorporated into the Contractor's Construction Schedule.

2.14 T&M Cost Records: In instances when a lump sum or unit price is not determined prior to performing work described in a request for a proposal, VCM shall request from the Contractor records of the cost of payroll, materials and equipment and the amount of payments to subcontractor's incurred by the Contractor in performing the work.

2.15 Progress Payments: VCM shall review and approve the Contractor's schedule of values and review the payment applications submitted by each Contractor and determine whether the amount requested reflects the progress of the Contractor's work. VCM shall make appropriate adjustments to each payment application and shall prepare and forward to the Design Consultant, with a copy to the Owner.

2.16 Project and Construction Budget Revision: VCM shall provide regular monitoring of the approved estimate of construction cost, showing actual costs for activities in progress, and estimates for uncompleted tasks. Identify variances between actual and budgeted or estimated costs, and advise the Owner and the Design Consultant whenever project costs exceed budgets or estimates.

2.17 Cx Commissioning: With the Design Consultant and the Owner's Commissioning Agent and maintenance personnel, observe Contractor and Commissioning Agent check-out of utilities, low voltage systems, operational systems and equipment for readiness and coordinate the initial start-up and testing.

2.18 Draft Request for Proposal Cx Commissioning: Draft Request for Proposal (RFP) for a mechanical, electrical, and low voltage Commissioning Agent for the facility. Solicit RFP to qualified firms, evaluate proposals, obtain proposal clarifications, interview proposers, and make recommendation to Owner for selection of a Commissioning Agent. Coordinate integration of Commissioning Agent into project and as listed in 2.17. Receive and approve/disapprove Commissioning Agent's invoices.

2.19 Draft Request for Proposal (RFP) for a Low Voltage designer: Solicit RFP to qualified firms, evaluate proposals, obtain proposal clarifications, interview proposers, and make recommendation to Owner for selection of a Low Voltage designer. Coordinate development of low voltage systems with Low Voltage designer, Gaming, Owner, Hotel, Design Consultant, and Contractor. Receive and approve/disapprove Low Voltage consultant's invoices.

2.20 Final Completion: Upon completion of the punchlist activities VCM will provide a recommendation to the Design Consultant and Owner on Final Acceptance.

### 3. Post-Construction

3.1 Final Payment: VCM shall advise the Owner when it is recommended that the final payment be made to the Contractors.

3.2 Record Documents: VCM shall coordinate and expedite submittals of information from the Contractors for as-built record drawings and transmit them to the Design Consultant.

3.3 Organize Operation Maintenance Materials: Prior to the Final Completion of the Project, VCM shall collect manufacturers' operations and maintenance manuals, warranties and guarantees as received from the Contractors, and submit such documents to the Design Consultant.

OWNER REPRESENTATIVE AGREEMENT (PHASE II CASINO) - 21

3.4 Warranty Issues:  Assist Facility staff resolving warranty work items during project closeout and develop a warranty work request and follow up process to be used by staff during the warranty period.

# Attachment B
## Rate Schedule

**Personnel Costs:**

|  |  | Rate/Hr |  |
|---|---|---|---|
| Scott Tomlinson | Project Director | $ 168 |  |
| Jack Rodgeway | Project Manager | $ 149 |  |
| Peter Watts | Casino Expert | $ 172 |  |
| Eric Smith | Executive Director | $ 199 |  |
| Technical Support | Cost/Sccheduling/Etc. | $ 136 |  |
|  | Not to Exceed Amount |  | $ 662,780 |

**Reimbursible Actual Expenses:**

|  |  |  |  |
|---|---|---|---|
| Estimated Per Diem-No Food | $1,000/MO |  | $ 19,000 |
| Airfare/Hotel/Meals |  |  | $ 14,720 |
| Mileage/Rental Car |  |  | $ 3,500 |
|  | Not to Exceed Amount |  | $ 37,220 |
| TERO Fee - 2.5% of Personnel Costs |  |  | $ 16,570 |
| **Total Contract Not to Exceed Amount** |  |  | **$ 716,570** |