**Exhibit J**

Exhibit J

# JOINT DEFENSE AGREEMENT

This Agreement is entered into by and between the Shoshone-Bannock Tribes ("Tribes") FFKR Architects and Planners II ("FFKR") and Vanir Construction Management, Inc. ("Vanir"), hereinafter cumulatively "The Parties." The Parties agree as follows:

    1.    <u>Application</u>.  The Parties to this Agreement desire to cooperate in reviewing, analyzing and defending claims, demands, expenses and charges asserted by Ormond Builders, Inc. (hereinafter cumulatively "Claims") related to design and construction of the Shoshone-Bannock Tribes Casino Project Phase 2 ("Project"). The Parties enter into this Agreement in order to avoid undue complication, preserve confidentiality, allow potential cooperation and reduce expense in the defense of the Claims while avoiding prejudicing their rights, one against the other.

    2.    <u>Work Product/Admissions/Confidentiality/Reservation of Rights</u>. The Parties may share confidential, privileged and work product information. The Parties intend to protect their confidences, secrets and work product. Therefore, The Parties agree that they and their attorneys shall not reveal any work product or shared confidences or secrets to other persons or entities without prior express written consent of the other protected Parties, except as follows:

    (a)    Where, pursuant to law, testimony can be compelled to be given notwithstanding the assertion of privilege arising from this Agreement or otherwise; and

    (b)    Where it is necessary to provide such information to consultants of a Party or insurers of a Party for their use in analyzing the Claims, provided that any such consultant or insurer agrees to be bound by this Agreement to the same extent as are The Parties.

Any materials, discussions or work product prepared, developed or compiled for Claims discussions or analyses (hereafter cumulatively "Joint Privilege Materials") shall not be deemed an admission of liability or responsibility by any Party hereto; nor shall any Party utilize any such Joint Privilege Materials as evidence in any present or future legal or other adjudicative proceeding between The Parties.

It is understood and agreed that some Joint Privilege Materials may be delivered by one Party to another Party orally. If any of The Parties engage in joint defense discussions, the participating Parties shall agree that such discussions are for the joint defense of Claims, and that the information exchanged in such discussions shall be treated as Joint Privilege Materials by all of The Parties. All written Joint Privilege Materials will be marked as such or contain the designation "Confidential Work Product" or "Confidential Attorney-Client Privilege." The Parties may mark Joint Defense Materials as "Confidential Work Product" or "Confidential Attorney-Client Privilege" at the time of the preparation of such materials or at the time of the delivery of such materials to another of The Parties, or may make such designations by a written notice to the other Parties at any time after such preparation or delivery of the materials, provided, however, such materials designated in this manner as Joint Defense Materials after their delivery to other Parties shall have the protections of this Agreement only after such designation has been made by written notice delivered to all of the other Parties. The Parties shall preserve the confidentiality of the

Joint Privilege Materials and shall take all steps necessary to assert all applicable rights, privileges and protections available to each of the respective Parties in order to avoid disclosure or waiver related thereto. The obligations of The Parties to preserve the confidentiality of Joint Privilege Materials and to assert rights, privileges and protections applicable thereto shall survive the termination of this Agreement, shall be severable from the other provisions of this Agreement, and shall be separately enforceable.

The limitation on revealing confidential and privileged work product information/Joint Privilege Materials, as set forth above, applies only to written materials specifically prepared by a Party and oral disclosures specifically made by a Party for the joint defense purpose of reviewing, defending and/or analyzing the Claims. The limitation does not apply to facts, opinions, statements, documents or work (hereinafter cumulatively "Information") prepared independently of the Joint Privilege Materials, even though such Information may be used in preparing or defending Claims.

A Party and its attorneys, consultants and insurers may disclose to others Joint Privilege Materials that the Party alone has prepared or obtained, that contain no Joint Privilege Materials obtained directly or indirectly from another Party or its attorneys, consultants or insurers, regardless of whether the Joint Privilege Materials have been shared with another Party or its attorneys, or consultants or insurers pursuant to this Agreement.

Nothing in this Agreement is intended to change or in any way limit, restrict or insulate the discoverability or admissibility under appropriate Civil Rules, of Information that was not specifically created or disclosed for the Claims, even though such Information may be used in defending Claims.

This Agreement is specifically considered the work product of The Parties, and the existence, drafting, negotiation and execution of this Agreement shall in no way operate as an admission of liability or of responsibility on any claim brought against any Party hereto; nor shall this Agreement constitute a release, waiver or estoppel by any Party.

3.    Inadmissibility of Agreement. Evidence of this Agreement shall not be admissible or used in any way in this or in any other future action or proceeding, except in a proceeding to enforce its terms. It is agreed that, except as otherwise required by law, the existence and contents of this Agreement shall be kept strictly confidential and no Party shall disclose its existence or contents to any other person without prior knowledge and written agreement of the other protected Parties, except that disclosure may be made (a) to each Party's current or future counsel with respect to representation of that Party in connection with the Claims, the Project or this Agreement; (b) to the extent necessary to enforce a Party's rights (i) following a failure by another Party to perform an obligation hereunder, or (ii) to protect against disclosures of Joint Privilege Materials not authorized by this Agreement ; (c) to each Party's insurance carrier(s) and consultants; and (d) to the extent compelled by order of a court of competent jurisdiction. Any breach of this provision shall not abrogate, nullify or in any way affect the validity or existence of this Agreement and shall not affect any of its terms, but the other Parties may pursue any other remedies available to them at law or in equity for such a breach.

131162.0001/7276342 1

4. <u>No Waivers.</u> This Agreement does not create an agency or similar relationship between The Parties. No Party to this Agreement or its representatives shall have authority to waive any applicable privilege or protection on behalf of another Party, nor shall any waiver of any applicable privilege or protection by the conduct of one Party or its representatives be construed as a waiver by another Party.

5. <u>Attorney-Client Relationship.</u> Each Party expressly disclaims that this Agreement or the sharing or disclosure of Joint Privilege Materials pursuant to this Agreement has or will create an attorney-client relationship, fiduciary relationship or agency of any kind between such Party and the attorney for any other Party.

6. <u>No Obligation to Reveal Information.</u> Nothing in this Agreement shall be interpreted to require any Party to reveal to another Party any information, which may be of common interest to the Parties in the defense of the Claims.

7. <u>Equitable Remedies.</u> The Parties acknowledge and agree that there is no adequate remedy at law for a breach of this Agreement, and that in addition to any other remedies available, performance may be specifically ordered or a breach may be enjoined, or both.

8. <u>Authority.</u> The Parties execute this Agreement in good faith and with the belief that they have legal authority to enter into this Agreement. All individuals who sign this Agreement on behalf of a Party represent that they have the authority to sign this Agreement on behalf of their respective Party and the authority to bind and commit the respective Party to the terms of this Agreement.

9. <u>Costs.</u> Unless otherwise agreed in writing, each Party shall bear its own internal time assisting in the joint defense, attorney's fees and costs. Expert costs shall be shared by mutual agreement, if any, as will shared expert selection and scoping.

10. <u>Termination.</u> It is expressly agreed and understood that this Agreement may be terminated at any time by any Party, with or without cause. If a Party should elect to terminate the Agreement for any reason, then it will give written notice to the other Parties stating the intent to terminate this Agreement.

Termination shall not affect the validity or enforceability of the confidentiality et al. provisions (Sections 2 and 3) of this Agreement, which shall survive any such termination.

11. <u>No Admission or Waiver.</u> The execution of this Agreement by any Party shall in no way operate as an admission of liability or of responsibility on any cause of action or on any claims brought against such Party.

12. <u>Modification of Agreement.</u> This Agreement may be modified only with a written consent of The Parties.

3

13.     Counterparts; Entire Agreement.  This Agreement contains the entire agreement between The Parties as to its subject matter, and does not affect pre-existing arrangements between The Parties regarding funding of the joint defense.  There are no third-Party beneficiaries to this Agreement.  This Agreement may be signed in any number of multiple counterparts, each of which shall be considered a duplicate original, so as to avoid the necessity or circulation of one physical original for signature by each of The Parties.  All such counterparts shall be considered originals and shall be considered one and the same instrument.

14.     Choice of Law.  This Agreement shall be construed in accordance with the laws of the Shoshone-Bannock Tribes and shall be binding upon the successors and assigns of The Parties.

15.     Notices.  Any notice required or permitted to be delivered hereunder shall be in writing, transmitted by personal delivery, United States Postal Service, Certified or Registered mail, Return Receipt Requested.  Such notice shall deemed to be delivered on the earlier of (a) the date received or (b) three (3) business days after having been deposited in the United States Postal Service, postage prepaid, registered or certified mail, return receipt requested.  The notices shall be to such person(s) and such address(es) as set forth below.

IN WITNESS WHEREOF, The Parties have executed this Agreement on the day and year below.

Name:    Shoshone-Bannock Tribes
Address:  Post Office Box 306
          Fort Hall, Idaho 83202
Attention: Bill Bacon

SHOSHONE-BANNOCK TRIBES

By _Nathan Small_____
Its duly authorized officer or agent
Date Signed: _6/5/18_____

Name:    FFKR Architects and Planners II
Address: 730 Pacific Ave.
         Salt Lake City, Utah 84104

FFKR ARCHITECTS AND PLANNERS II

By _____
Its duly authorized officer or agent
Date Signed: _6/27/2018_____

Name:    Vanir Construction Management, Inc.
Address: 4540 Duckhorn Drive, Suite 300
         Sacramento, CA 95834
Attention: Joseph A. Mehula

VANIR CONSTRUCTION MANAGEMENT, INC.

By _____
Its duly authorized officer or agent
Date Signed: _5/10/2018_____

Craig R. Mariger
Jones, Waldo, Holbrook & McDonough, P.C.
170 South Main Street, Suite 1500
Salt Lake City, Utah 84101

Paul Echo Hawk
ECHO HAWK LAW OFFICE
P.O. Box 4166
Pocatello, Idaho 83205

Andrew Gabel
Lane Powell PC
1420 Fifth Ave., Suite 4200
Seattle, WA 98101

131162.0001/7276342.1