Elijah M. Watkins, ISB No. 8977
elijah.watkins@stoel.com
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID 83702
Telephone: 208.389.9000
Facsimile: 208.389.9040

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHOSHONE-BANNOCK TRIBES; and FORT HALL BUSINESS COUNCIL,<br><br>Plaintiffs,<br><br>v.<br><br>VANIR CONSTRUCTION MANAGEMENT, INC.,<br><br>Defendant. | Case No. 4:23-cv-00160-REP<br><br>**OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND [Dkt. 7]** |

## I. INTRODUCTION

Defendant Vanir Construction Management, Inc. ("Vanir") hereby files this Opposition in response to Plaintiffs Shoshone-Bannock Tribes and Fort Hall Business Council's (collectively, the "Tribes") Motion for Remand (the "Motion"). It is undisputed that the Tribes' lawsuit arises from a contract (the "Contract") that is *only* between Vanir and the Tribes' attorneys. The Tribes are not party to the Contract, nor are they third-party beneficiaries. Further, Vanir is a non-tribal member, and neither is the Shoshone-Bannock Tribal Attorney's Office—the Tribes' attorneys are not an "arm" of the Tribes. Because the real parties in interest to this dispute are both non-tribal members, the tribal court lacks jurisdiction to hear the dispute. Further, because removal was timely, and because this Court has diversity jurisdiction, the Court should deny the Motion.

## II. COUNTERSTATEMENT OF BACKGROUND

Vanir relies upon the Tribes' Background section of the Motion unless otherwise stated.

The Tribes' Complaint names two Plaintiffs: the Shoshone-Bannock Tribes and the Fort Hall Business Council. Those Plaintiffs bring four claims, all of which flow from the Contract. *See* Compl. ¶¶ 29, 36, 42, 46. In short, this lawsuit is all about the Contract.

In December 2019, the Contract was amended by Bill Bacon (one of the attorneys bringing this lawsuit) to substitute the Shoshone-Bannock Tribal Attorney's Office in place of the Fort Hall Business Council. Dkt. No. 1-7, p. 41 of 42. After that time, neither the Shoshone-Bannock Tribes nor the Fort Hall Business Council was party to the Contract. *Id.* Indeed, the Contract itself *expressly* states that there are no third-party beneficiaries to the Contract:

> This Agreement is not intended to create nor shall it be construed as creating any contractual relationship or obligations between the Owner Representative and any third party . . . . Nothing contained in this Agreement, nor the performance of the parties hereunder shall inure to the benefit of any third party.

*Id.* § 15.3 (Third Parties).

Before the Contract was amended, Mr. Bacon stated in an email to Vanir, in relevant part: "The purpose of the amendment is to have any communication between Vanir and the SBT covered by the attorney work-product privilege." Declaration of Mark Johnson in Support of Motion to Disqualify, Ex. L; *see also* Declaration of William Bacon in Support of Motion for Remand ¶ 2.

### III. ARGUMENT

The tribal court does not have jurisdiction over Vanir, the Shoshone-Bannock Tribal Attorney's Office, or this dispute, and the case was properly removed to federal court.[1]

The scope of a federal court's jurisdiction is a federal question under 28 U.S.C. § 1331. *Nat'l Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845 (1985). A tribal court's jurisdiction over nonmembers of the Tribes is limited. *Montana v. United States*, 450 U.S. 544, 564 (1981) (holding that tribes sovereign rights as a nation within the United States have necessarily been limited to no longer include the right "to determine their external relations. . . . They involve only the relations among members of a tribe" (cleaned up)); *United States v. Lara*, 541 U.S. 193, 202 (2004) (holding that under the U.S. Constitution's "plenary grants of authority" over Indian affairs, Congress has the power "to enact legislation that both restricts and, in turn, relaxes those restrictions on tribal sovereign authority'" (internal quotation marks omitted)). Accordingly, whether a tribal court has adjudicative authority over nonmembers is a federal question, and federal courts have subject matter jurisdiction to consider that issue pursuant to 28 U.S.C. § 1331. *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 324 (2008).

---

[1] Alternatively, Vanir could have brought a new action in federal court to enjoin the tribal court's jurisdiction. To avoid unnecessary delay, the case was instead removed from the tribal court to federal court. For the reasons discussed below, this is immaterial to the Court's analysis: the Court need not defer to the tribal court's determination of its own jurisdiction where, as here, the tribal court plainly lacks subject matter jurisdiction. *Nevada v. Hicks*, 533 U.S. 353, 369 (2001).

OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND [Dkt. 7] - 3

The Tribes' Motion should be denied because (1) the Contract between non-Indian legal counsel and non-Indian Vanir does not enjoy sovereign immunity and (2) all of the Tribes' other arguments for remand fail.

A. **The Contract is between the Tribes' legal counsel and Vanir, and the legal counsel does not enjoy sovereign immunity.**

The Tribes do not dispute that this lawsuit arises from the Contract and the Contract is between Vanir and the Shoshone-Bannock Tribal Attorney's Office. Mot. for Remand at 3. Neither the Shoshone-Bannock Tribes nor the Fort Hall Business Council is party to the Contract any longer. *Id.* The Contract itself expressly states that it creates no contractual relationship or obligations between Vanir and any third party, nor do any third parties otherwise benefit from the Contract. *Id.* § 15.3. Therefore, the tribal court lacks jurisdiction over this dispute because (1) the Shoshone-Bannock Tribal Attorney's Office is not an "arm" of the Tribes subject to sovereign immunity and (2) regardless of the fact that this lawsuit was initiated with improper named plaintiffs, the Shoshone-Bannock Tribal Attorney's Office is the "real party in interest" and not subject to the Tribes' sovereign immunity.

   1. **The Shoshone-Bannock Tribal Attorney's Office is not an "arm" of the Tribes subject to sovereign immunity.**

The Tribes' legal counsel is not an arm of the Tribes entitled to sovereign immunity. In *White v. University of California*, 765 F.3d 1010 (9th Cir. 2014), the Ninth Circuit adopted a five-factor test to determine when an entity is an arm of a tribe: "(1) the method of creation of the economic entities; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) the tribe's intent with respect to the sharing of its sovereign immunity; and (5) the financial relationship between the tribe and the entities." *Id.* at 1025 (citation omitted). As discussed below, all five factors weigh against a finding that the Shoshone-Bannock Tribal Attorney's Office is an "arm" of the Tribes.

### a. Method of creation of economic entity.

In considering this factor, courts have focused on the law under which the entity was formed. Formation under tribal law weighs in favor of immunity. *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1191 (10th Cir. 2010). Formation under state law weighs against immunity, *Am. Prop. Mgmt. Corp. v. Superior Court*, 141 Cal. Rptr. 3d 802, 810-11 (Cal. Ct. App. 2012) (abrogated on other grounds), or constitutes a waiver of immunity, *Wright v. Colville Tribal Enter. Corp*, 147 P.3d 1275 (Wash. 2006); *Runyon ex rel. B.R. v. Ass'n of Vill. Council Presidents*, 84 P.3d 437, 441 (Alaska 2004). The circumstances under which the entity's formation occurred, including whether the tribe initiated or absorbed the operational commercial enterprise, are also relevant. *People v. Miami Nation Enters.*, 211 Cal. Rptr. 3d 837, 854 (Cal. 2016).

This factor weighs against finding that the Shoshone-Bannock Tribal Attorney's Office is an arm of the Tribe subject to sovereign immunity. There is no indication that the Shoshone-Bannock Tribal Attorney's Office was formed under the relevant tribal law of the Tribes. *See generally* Shoshone-Bannock Tribes, The Law and Order Code, https://library.municode.com/tribes_and_tribal_nations/shoshone-bannock_tribes/codes/the_law_and_order_code (online content updated May 16, 2022). While Title 3 of the Law and Order Code sets up the Shoshone-Bannock Tribal Court system, nothing in the Code creates the Tribal Attorney's Office pursuant to tribal law. The Constitution & Bylaws for the Tribes are equally silent. Shoshone-Bannock Tribes, Constitution & Bylaws, https://www.sbtribes.com/constitution-bylaws/ (last visited May 18, 2023). In truth, and as confirmed during the May 11, 2023, Shoshone-Bannock Tribes Annual Meeting, the Tribal Attorney's Office serves under contract (just like any

other attorney) for economic gain.[2] These attorneys are licensed by the Idaho State Bar. The Tribes' attorneys are not a creature of tribal law.

Despite this reality the Tribes' legal counsel asserts that it is an "administrative government office" of the Tribes because counsel's offices are physically located in the same building as the Fort Hall Business Council. Bacon Decl. ¶¶ 3-4. Mr. Bacon and the Tribes do not rely on any citation to any tribal code, law, or agreement with the Tribes supporting the notion that the Shoshone-Bannock Tribal Attorney's Office was formed by the Tribes as an "administrative government office." Nor do they assert that the Tribe has absorbed legal counsel as an operational commercial enterprise of the Tribe.

Obviously, sharing office space with a sovereign does not make the office co-tenant equally a sovereign. Sovereignty does not simply "rub off" on one's neighbor. Were that not the case the Court's staff would also all be Internal Revenue Service ("IRS") agents merely because the IRS has offices in the James A. McClure Federal Building. The attorneys are employed through contract, not tribal law, and are not sovereign—just like any other attorney in Idaho. This *White* factor goes to Vanir.

b. **Tribal intent.**

A tribal ordinance or the articles of incorporation of the entity may express whether a tribe intended the entity to share in its immunity. *Breakthrough*, 629 F.3d at 1193. The entity bears the burden of proof for this factor. If there is no tribal ordinance, no statement in the articles of

---

[2] Lori Ann Edmo, Tribal members vote again to put tribal attorney contracts on ballot, *Sho-Ban News*, http://shobannews.com/local_sb0516a01wd.html (May 12, 2023) ("A quorum of 150 tribal members was reached at the Shoshone-Bannock Tribes Annual Meeting at around 11:30 a.m. May 11 where one resolution was approved to again place two tribal attorney contracts on the ballot. . . . [Chairman Nathan] Small called the meeting to order at 12:05 p.m. . . . Sherwin Racehorse made a motion to put tribal attorneys Bill Bacon and Brandelle Whitworth's contracts on the ballot to be voted on. Both Marina Fasthorse and Maxine Edmo seconded the motion. Discussion occurred. Mary Washakie said under Title 18 of the U.S. Code the council can hire [*sic*] tribal attorney but the salary has to be presented to the membership to be approved. Chairman Small said the council can hire attorneys with the approval of the membership with fees confirmed by the general membership. The vote commenced with 106 in favor, 9 opposed and many not voting.").

OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND [Dkt. 7] - 6

incorporation, or the tribe was otherwise silent as to its intent, this factor will likely weigh against immunity. However, it may be possible for the court to infer intent from the tribe's actions or other sources if the tribe was otherwise silent. *Id*.

For the same reasons discussed above, this factor weighs against a finding that the Shoshone-Bannock Tribal Attorney's Office is an arm of the Tribes subject to sovereign immunity. Neither the Law and Order Code nor the Constitution & Bylaws shows any intent by the Tribes to share their sovereignty with their contract attorneys. As the Shoshone-Bannock Tribes' Annual Meeting made plain, there is no intent from tribal members to treat the Tribal Attorney's Office differently than any other employee. The Tribes have not satisfied their burden of showing a tribal ordinance or clause in the articles of incorporation of the tribal entity expressing an intent to share its immunity with the Shoshone-Bannock Tribal Attorney's Office.

   c.  **Purpose.**

Determining the purpose of the entity looks to both the stated and actual purpose of the entity. *Id.* Judicial inquiry into the entity's purpose may elucidate whether its relationship with the tribe is sufficiently close, whether its activities are sufficiently germane to tribal self-governance, and whether the entity shares in the tribe's immunity. *Id.*

First, the Court will look to the stated purpose of the entity in either a tribal ordinance, a resolution, or the articles of incorporation of the entity. The stated purpose of the entity need not be purely governmental; as long as the purpose relates to the broader goals of self-governance, was created to develop the tribe's economy, funds governmental services, or promotes cultural autonomy, then the factor will weigh in favor of immunity. *Id.* at 1192; *Gavle v. Little Six, Inc.*, 555 N.W.2d 284, 295 (Minn. 1996); *Am. Prop. Mgmt.*, 141 Cal. Rptr. 3d at 816-17 (Aaron, J., concurring). If an entity is created solely for business purposes without a declared objective promoting the tribe's general tribal or economic development, the factor will weigh against

immunity. *Trudgeon v. Fantasy Spring Casino*, 84 Cal. Rptr. 2d 65, 69 (1999) (abrogated on other grounds).

If the stated purpose is related to self-governance, the court will then examine the extent to which the entity actually serves that purpose. *Miami Nation Enters.*, 211 Cal. Rptr. 3d at 855. The actual purpose does not have to be exactly the same as the stated purpose, but the closer the fit, the more the factor will weigh in favor of immunity. *Id.* Evidence that the entity engages in activity unrelated to its stated goals or that it operates to enrich primarily persons outside the tribe or only a handful of tribal leaders weighs against a finding of immunity. *Id.*

This *White* factor weighs against a finding that the Shoshone-Bannock Tribal Attorney's Office is an arm of the Tribe subject to sovereign immunity. As discussed above, Plaintiffs have not demonstrated that the Shoshone-Bannock Tribal Attorney's Office is discussed in any tribal ordinance, resolution, or articles of incorporation or was otherwise created by the Tribes. Further, Mr. Bacon's declaration in support of remand states that he "advise[s] the Fort Hall Business Council and represent[s] the Tribes' legal interests with respect to all manner of issues and proceedings." Bacon Decl. ¶ 3. There is no mention of serving the Tribe's broader goals of self-governance. And he neglects to include that, according to the Tribal Attorney's Office website, Mr. Bacon also advises "the Tribal Enterprises, the Shoshone-Bannock Hotel & Event Center, the Fort Hall Casino, and Sho-Ban Tribal Gaming."[3] That is, Mr. Bacon provide legal advice to commercial enterprises—just like any other commercial lawyer. His law office serves general business purposes without a "declared objective promoting the tribe's general tribal or economic development," which weighs against immunity. *Trudgeon*, 84 Cal. Rptr.2d at 70 (brackets and citation omitted).

---

[3] Shoshone-Bannock Tribes, Tribal Attorneys, https://www.sbtribes.com/legal/ (last visited May 18, 2023).

### d. Control.

The concerns of this factor are the entity's structure, ownership, and management, including the amount of control the tribe has over the entity. *Breakthrough*, 629 F.3d at 1191. Considerations include governance structure, the extent to which the entity is owned by the tribe, and the entity's day-to-day management. *Id.* Evidence that the tribe actively directs or oversees the operation of the entity weighs in favor of immunity. Evidence that the tribe is a passive owner, neglects its governance roles, or otherwise exercises little or no control or oversight weighs against immunity. *Am. Prop. Mgmt.*, 141 Cal. Rptr. 3d at 812-12.

This factor weighs against a finding that the Shoshone-Bannock Tribal Attorney's Office is an arm of the Tribes subject to sovereign immunity. As discussed above, Plaintiffs have not demonstrated that the Shoshone-Bannock Tribal Attorney's Office is owned, managed, or governed by the Tribes whatsoever or was otherwise created by the Tribes. Further, under the Rules of Professional Conduct, the Tribal Attorney's Office is ethically barred from allowing the Tribes to control it. I.R.P.C. 5.4(c) ("A lawyer shall not permit a person who . . . employs . . . the lawyer . . . to direct or regulate the lawyer's professional judgment in rendering such legal services."), 5.4(d) ("A lawyer shall not practice with or in the form of a professional corporation or association authorized to practice law for a profit, if: . . . (3) a nonlawyer has the right to direct or control the professional judgment of a lawyer."). The Tribes are simply clients of the Shoshone-Bannock Tribal Attorney's Office, who are contracted to provide legal services, and are not controlled by it, just as any other client does not control his attorney.

### e. Financial relationship.

The starting point for this factor is whether a judgment against the entity would reach the tribe's assets. *Am. Prop. Mgmt.*, 141 Cal. Rptr. 3d at 813. Direct tribal liability for the entity's actions is neither a threshold requirement nor a predominant factor in the overall analysis. "Some

tribes rely on such business revenues to an extent that a judgment against the entity could effectively strike a blow against the tribal treasury, regardless of whether the tribe is directly liable." *Miami Nation Enters.*, 211 Cal. Rptr. 3d at 856.

Courts will consider the extent to which the tribe "depends heavily on the [entity] for revenue to fund its governmental functions, its support of tribal members, and its search for other economic development opportunities." *Breakthrough*, 629 F.3d at 1195. If a significant percentage of the entity's revenue flows to the tribe, or if a judgment against the entity would significantly affect the tribal treasury, this factor will weigh in favor of immunity even if the entity's liability is formally limited. *Wright*, 147 P.3d at 1284 (Madsen, J., concurring). Determining whether this factor weighs in favor of immunity requires a consideration of degree rather than a binary decision. The entity must do more than simply assert that it generates some revenue for the tribe in order to tilt this factor in favor of immunity. *Id.*

This factor weighs against a finding that the Shoshone-Bannock Tribal Attorney's Office is an arm of the Tribes subject to sovereign immunity. Plaintiffs do not assert that a judgment against the Tribes' attorneys would reach the Tribes' assets or that the law firms' business revenues flow to the Tribes' coffers. While the attorneys certainly depend on the Tribes for business, this does not support a finding that the law firm is subject to the Tribes' sovereign immunity. After all, if the tribal attorneys are found liable it would most likely be their malpractice insurance that takes a hit, not the Tribes' treasury. Clients are not responsible for torts committed by their lawyers. And again, under the Rules of Professional Conduct, the tribal attorneys' bar licenses prevent them from sharing money with the Tribes. I.R.P.C. 5.4(a) ("A lawyer or law firm shall not share legal fees with a nonlawyer[.]").

For the above-discussed reasons, all five of the *White* factors weigh against a finding that the Shoshone-Bannock Tribal Attorney's Office is an arm of the Tribe, so the necessary

consequence of that conclusion is that the tribal attorneys are not covered by the Tribe's sovereign immunity protections. Because the Tribal Attorney's Office does not enjoy sovereign immunity that means that the Contract at issue is merely between two non-Indian contracting parties from two different states (Idaho and California), making federal jurisdiction appropriate.

2. **The Tribes are not the "real party in interest."**

Importantly, in determining remand courts are to consider the actual parties in interest—not those parties (improperly) named in the complaint.

> Our cases establish that, in the context of lawsuits against state and federal employees or entities, courts should look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit. *See Hafer v. Melo*, 502 U.S. 21, 25 . . . (1991). In making this assessment, courts may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign.

*Lewis v. Clarke*, 581 U.S. 155, 161-62 (2017). This analysis applies to the question of tribal sovereign immunity. *Id.* at 163 ("There is no reason to depart from these general rules in the context of tribal sovereign immunity.").

In *Lewis*, a tribal employee limousine driver was sued in his individual capacity after he hit a motorist while driving a tribe-owned limousine carrying passengers from a tribal casino. *Id.* at 159-60. The limousine driver moved to dismiss, arguing lack of subject-matter jurisdiction on the basis of tribal sovereign immunity. *Id.* at 160. The trial court denied the motion, and the Connecticut Supreme Court reversed.

The U.S. Supreme Court held that the limousine driver was not entitled to the tribe's sovereign immunity. He was operating a vehicle within the scope of his employment, and further, the judgment against him would not operate against the tribe. *Id.* at 163. For these reasons, the suit "will not require action by the sovereign or disturb the sovereign's property." *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687 (1949). It was immaterial to the Court that the

tribe had signed an agreement to indemnify Clarke for a judgment that he may face as a result of the lawsuit. *Lewis*, 581 U.S. at 167. What mattered was that he was merely an employee doing his job, albeit negligently, which was not enough to transform him into a sovereign.

In this case, the real party in interest is the Shoshone-Bannock Tribal Attorney's Office—the only party to the Contract with Vanir. While Vanir has yet to Answer, and so has yet to plead any counterclaims, any judgment against the Shoshone-Bannock Tribal Attorney's Office would not be paid by the Tribe (possibly being covered by the firm's malpractice insurance). The Shoshone-Bannock Tribal Attorney's Office is the real party in interest.

For the above-discussed reasons, the Court should deny the Motion because this suit does not actually implicate the Tribes' sovereign immunity.

**B.      The Tribes' other arguments for remand fail.**

The Tribe contends that, in addition to being an "arm" of the Tribe (it is not), the Court should grant the Motion for several other reasons. All of these reasons fail.

   **1.      The Contract's venue provision designating the tribal court is unenforceable.**

While it is correct that the Contract designates the tribal court as the venue for disputes arising out of the Contract, the clause that originally applied to Vanir and the Tribes is now between two non-Native American Indians. As such it is unenforceable because the tribal court lacks subject matter jurisdiction over this dispute. Further, the forum selection clause is unenforceable under Idaho law.

The Ninth Circuit has made clear that tribal courts are not courts of general jurisdiction: "[a]s a general rule, tribes do not have jurisdiction, either legislative or adjudicative, over nonmembers, and tribal courts are not courts of general jurisdiction." *Philip Morris USA, Inc. v. King Mountain Tobacco Co.*, 569 F.3d 932, 939 (9th Cir. 2009). Unlike, for example, Delaware, where non-Delaware citizens can agree to have their contractual disputes heard there and decided

under that state's law, a tribe cannot be the chosen venue for two non-tribal members. The U.S. Supreme Court has found only two exceptions to this rule outside an expression from Congress: first, where a nonmember enters a consensual relationship with the tribe or its members, or second, where the activity "directly affects the tribe's political integrity, economic security, health, or welfare." *Strate v. A-1 Contractors*, 520 U.S. 438, 446 (1997); *see also Smith v. Salish Kootenai Coll.*, 434 F.3d 1127, 1131 (9th Cir. 2006).

Neither exception applies here. No nonmember has entered into a consensual relationship with the Tribes or a member. Non-Native American Indian Vanir entered into a contract with non-Native American Indian tribal attorneys. And as discussed *supra*, the Shoshone-Bannock Tribal Attorney's Office is not an "arm" of the Tribes. While it is true that when the Contract was first entered into, and the Tribes were party to it, Vanir entered into a consensual relationship with the Tribes by virtue of the Contract. But since 2019, the relationship is with another nonmember. As such, this exception no longer applies.

The second exception also does not apply. The Contract involves construction management services, not unlike similar construction contracts entered into everyday between property owners large and small, both on and off tribal lands. None of Vanir's conduct is related to self-governance or internal tribal relations that threatens Plaintiffs' political integrity, economic security, or health and welfare. This exception simply does not apply.

Given that there is a contract dispute between two non-Native American Indians, this Court would presumptively apply Idaho law because it is the forum state. And under Idaho law, the forum selection clause is unenforceable to the extent it restricts Vanir from enforcing its contract rights in an Idaho tribunal. Idaho Code § 29-110(1); *Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 916 (9th Cir. 2019) ("Accordingly, we hold that the forum-selection clause in the Agreement between Gemtech and Smith & Wesson is unenforceable under *Advanced China*

*Healthcare* and *Bremen* because enforcement would contravene a strong public policy of Idaho, as declared by Idaho Code § 29-110(1).").

For these reasons, the tribal court lacks jurisdiction over this dispute and the venue provision is unenforceable.

    2.    **The removal statute authorizes removal from tribal court.**

Contrary to the Tribes' assertion, the removal statute, 28 U.S.C. § 1441, *et seq.* authorizes removal from tribal court, at least implicitly. Removal is proper where the federal court would have had original jurisdiction. 28 U.S.C. § 1441(a). Arguably, that is the more important—and more often discussed—part of the removal statute. Here, this Court has original jurisdiction through diversity with nonmember contracting parties from Idaho and California.

In *El Paso Natural Gas v. Neztsosie*, the U.S. Supreme Court looked at the language of the federal statute granting federal courts original federal question jurisdiction (the Price-Anderson Act ("Act")). 526 U.S. 473 (1999). The language of that Act is similar to 28 U.S.C. § 1441(a)—it provides removal as of right if an action under the Act is brought in *state court*. The Court said that Congress clearly intended defendants in those actions to be able to remove to federal court, and the lack of language regarding tribal court was an oversight. *Id.* at 487. Similarly, 28 U.S.C. § 1441(a) clearly intends to provide diverse defendants the opportunity to have their cases heard in federal court through the process of removal, even though tribal courts are not specifically called out in the statute.

The case relied on by the Tribes in support of their argument that the removal statute does not allow for removal from tribal court is inapposite. In *Bodi v. Shingle Springs Band of Miwok Indians*, a tribal member sued another tribal member in *state* court and it was removed to federal court. 832 F.3d 1011 (9th Cir. 2016). The Ninth Circuit held that a federally recognized Indian tribe does not waive its sovereign immunity from suit by exercising its right to remove to federal

court a case filed against it in state court. *Id.* at 1012. Here, the Tribes have not removed a state court action to federal court, rather non-Native American Indian Vanir removed a tribal court case against non-Native American Indian tribal attorneys to federal court. *Bodi* simply does not apply to these facts.

### 3. Vanir's removal from tribal court was timely.

Contrary to the Tribes' assertions, Vanir's removal to this Court was timely. The original 30-day window is triggered when the defendant's receipt of an initial pleading reveals a basis for removal on its face. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 693-94 (9th Cir. 2005). If it is not evident on its face, then the second 30-day window starts when the defendant receives an amended complaint that reveals the case is removable on its face, such as by a change of the parties. *Id.* The defendant's subjective knowledge cannot trigger commencement of limitations period, and the defendant does not have a duty to make further inquiry if an initial pleading is indeterminate as to removability. *Id.* at 694. "If we were to flip the burden and interpret the first paragraph of 28 U.S.C. § 1446(b) (the first thirty-day window) to apply to all initial pleadings unless they clearly reveal that the case is not removable, defendants would be faced with an unreasonable and unrealistic burden to determine removability within thirty days of receiving the initial pleading." *Id.*

Here, both the first and second 30-day windows have not run because the Shoshone-Bannock Tribal Attorney's Office still has not been correctly named as a party. Therefore, diversity of citizenship of the parties is not apparent on the face of the Complaint. The subjective knowledge of Vanir that the Contract was with the Shoshone-Bannock Tribal Attorney's Office is immaterial—the burden is not on Vanir to determine removability with facts outside the Tribes' Complaint. The Tribes should not be allowed to benefit from intentionally naming incorrect parties to avoid diversity jurisdiction and removal to this Court.

### 4. The Court does not need to defer the determination of jurisdiction to the tribal court under the tribal exhaustion rule.

As a matter of comity, in some cases federal courts decline to entertain challenges to tribal court jurisdiction until tribal remedies are exhausted. *Elliot v. White Mountain Apache Tribal Court*, 566 F.3d 842, 844 (9th Cir.), *cert. denied*, 588 U.S. 1024 (2009); *see Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856 (1985). However, comity is a discretionary matter of deference and should not be applied by the Court here. The U.S. Supreme Court has recognized several exceptions to this exhaustion requirement, including when it is "plain" that tribal court jurisdiction is lacking, so that the exhaustion requirement "would serve no purpose other than delay." *Elliot*, 566 F.3d at 847 (quoting *Nevada v. Hicks*, 533 U.S. 353, 369 (2001)).

To determine whether it is "plain" that tribal jurisdiction is lacking, the Court determines whether jurisdiction is plausible. Under *Montana*, 450 U.S. 544, a tribe may only regulate the conduct of nonmembers where (1) the conduct relates to a consensual relationship between the nonmembers and the tribe or its members or (2) the conduct threatens or has some direct effect on the political integrity, economic security, or the health or welfare of the tribe. Both of these authorities are narrowly construed against tribal court jurisdiction. As discussed *supra* neither exception applies here.

Since tribal court jurisdiction is not plausible under the *Montana* exceptions, the jurisdiction of the tribal court is plainly lacking, and the Court should not defer to the tribal court under the doctrine of comity and require exhaustion of tribal remedies. Such deference would only serve to delay the inevitable and the parties would be before the Court again seeking the same determination that the tribal court lacks jurisdiction. Therefore, removal was proper and this Court should exercise jurisdiction.

### 5. The Court should not award the Tribes their fees and costs.

Pursuant to 28 U.S.C. § 1447(c), even if the Court grants the Motion (it should not), the Court should decline to award the Tribes their fees and costs incurred. Absent unusual circumstances, a court may award costs and attorney fees under the motion to remand provision of the statute regarding procedure after removal *only* where the removing party lacked an objectively reasonable basis for seeking removal. 28 U.S.C. § 1447(c); *Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543 (9th Cir. 2018).

For the above-discussed reasons, Vanir has an objectively reasonable basis for seeking removal. Most importantly, it is undisputed that the Shoshone-Bannock Tribal Attorney's Office is the party to the Contract, not the Tribes. As discussed above, there are objectively reasonable arguments that the Shoshone-Bannock Tribal Attorney's Office is not protected by the Tribes' sovereign immunity, and that the tribal court lacks subject matter jurisdiction. Even if this Court ultimately rules against Vanir, Vanir's bases for seeking removal are objectively reasonable.

### IV. CONCLUSION

For the above-discussed reasons, Vanir urges the Court to deny the Tribes' motion for remand *in toto*.

DATED: May 18, 2023.

        STOEL RIVES LLP

        */s/ Elijah M. Watkins*
        Elijah M. Watkins

        *Attorneys for Defendant*