Paul C. Echo Hawk (ISB # 5802)
ECHO HAWK LAW OFFICE
P.O. Box 4166
Pocatello, Idaho 83205
Telephone: (208) 705-9503
Facsimile: (208) 904-3878
paul@echohawklaw.com

William F. Bacon, General Counsel (ISB # 2766)
SHOSHONE-BANNOCK TRIBES
P.O. Box 306
Fort Hall, Idaho 83203
Telephone: (208) 478-3822
Facsimile: (208) 237-9736
bbacon@sbtribes.com

*Attorneys for Shoshone-Bannock Tribes and Fort Hall Business Council*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| SHOSHONE-BANNOCK TRIBES; and FORT HALL BUSINESS COUNCIL, <br><br> Plaintiffs, <br><br> V. <br><br> VANIR CONSTRUCTION MANAGEMENT, INC., <br><br> Defendant. | Case No. 4:23-cv-00160-REP <br><br> **REPLY IN SUPPORT OF MOTION FOR REMAND [DKT. 7]** |

## I. INTRODUCTION

In response to arguments grounded in well-settled principles of federal Indian law and plain-language statutory interpretation, Vanir argues the Tribal Court lacks jurisdiction over Vanir, ignoring the truth that Vanir expressly consented to Tribal Court jurisdiction as the exclusive forum for dispute resolution. Vanir's entire argument relies on an unsupported theory that an after-the-fact amendment to the contract between Vanir and the Tribes somehow "implicitly" allows removal of a tribal court action, excuses Vanir's late-filed notice of removal, circumvents the Tribes' sovereign immunity from suit, and justifies ignoring the principles of comity and exhaustion of tribal court remedies. The Court should reject each of Vanir's response arguments for the reasons set forth below.

**A.     The December 9, 2019 amendment to the Vanir contract is irrelevant to this case because it was executed <u>after</u> all of the events relevant to the Tribes claims.**

The Tribes filed its original Complaint against Vanir in Tribal Court on May 26, 2020. The purpose of the lawsuit was to seek "recovery of damages incurred by the Tribes as a result of the negligence and breaches of contact by Vanir Construction Management, Inc. ("Vanir") stemming from the design, construction, and contract administration of the Phase II Casino Expansion Project ("Project") within the exterior boundaries of the Fort Hall Reservation." Dkt. 1-2, ¶ 1. The Complaint's allegations are confined to the timeframe between contract execution and final award by the arbitration panel. The contract amendment Vanir incorrectly relies on happened well after every event relevant to the Tribes' Complaint and is prospective in nature. In any case, the plaintiffs in the case are (and have always been) the Shoshone-Bannock Tribes and the Fort Hall Business Council--not the Shoshone-Bannock Tribal Attorney's Office or William Bacon personally.

**1.     The relevant time period for the Tribes' Complaint is July 14, 2015 to October 30, 2019, which <u>is all before</u> the December 9, 2019 Contract amendment.**

The Tribes and Vanir executed an agreement on July 14, 2015. The Tribes terminated the original construction contractor, Ormond Builders, Inc. ("Ormond") in April of 2018. The replacement contractor reached substantial completion on or about January 18, 2019. In April of 2019, the Tribes and OBI participated in a prolonged arbitration hearing over the design, construction, and contract administration of the Project. Dkt. No. 1-2, ¶ 18. OBI alleged, among other claims, that Vanir mismanaged the Project as the Owner's representative causing significant cost overruns. *Id*. Ultimately, the arbitration panel issued an award in favor of OBI against the Tribes. *Id.*, ¶¶ 19-20. The Final Order in the arbitration was issued on October 20, 2019. It is this time period between contract execution (July 14, 2015) and the arbitration panel's final award (October 30, 2019) that is relevant to the Tribe's Complaint in Tribal Court. In fact, the negligent performance and breach of contract issues alleged in the Tribe's Complaint in Tribal Court only

references events prior to the arbitration panel's final award and before contract Amendment No. 8 on December 9, 2019. There is simply no claim or allegation in the Tribes' Complaint in Tribal Court that is grounded in an act or omission of Vanir that happened after the Vanir contract was amended on December 9, 2019. The amendment is entirely prospective in nature, and nothing in the language of the amendment purported to impact anything in the past.

    **2.    The December 9, 2019 amendment to the Vanir Contract did not affect the ability of the Shoshone-Bannock Tribes and Fort Hall Business Council to sue Vanir for its negligence and performance failures prior to the date of the amendment.**

The December 9, 2019 amendment to the Vanir contract provided that "all terms and conditions of the Agreement, including any prior amendments thereto and all documents incorporated there in by reference, shall remain in full force and effect." Dkt. 1-7, pg. 41. Further, the amendment states: "effective the date of the last signed." As shown above, all of the events relevant to the Tribes' claims in its Tribal Court complaint happened before the December 9, 2019 amendment. The Tribal government and leadership were (and still are) the real parties in interest during the relevant time period. Vanir provides no legal authority to support its odd argument that an after-the-fact contract amendment somehow changes the parties appearing as plaintiffs in a lawsuit. The Shoshone-Bannock Tribes and Fort Hall Business Council are the plaintiffs in this lawsuit and Vanir provides no legal authority to support its argument that the Court should ignore this fact and somehow consider an unnamed party to be the plaintiff. In any case, the Tribes maintain that the named plaintiffs are the proper parties to the Tribal Court lawsuit regardless of the December 9, 2019 contract amendment.

**B.    The Tribal Court has jurisdiction to hear this case.**

In its response to the Tribes' motion for remand, Vanir begins its argument by asserting: "The tribal court does not have jurisdiction over Vanir . . . ." Dkt. 16, pg. 3. In a footnote to the statement, Vanir claims: "Alternatively, Vanir could have brought a new action in federal court to

REPLY IN SUPPORT OF MOTION FOR REMAND - 3

enjoin the tribal court's jurisdiction. To avoid unnecessary delay the case was instead removed from the tribal court to the federal court." *Id.*, n.1.

   1. **Vanir's contractual relationship with the Tribes and express consent to Tribal Court jurisdiction supports Tribal Court jurisdiction over Vanir in this case.**

First, it bears repeating that Vanir contractually consented to Tribal Court jurisdiction over this case. The agreement between the Tribes and Vanir placed exclusive jurisdiction over any dispute between the Parties with the Shoshone-Bannock Tribal Court:

> The parties hereto further agree the laws of the Shoshone-Bannock Tribes shall apply and any disputes will be filed with the Tribal Court of the Shoshone-Bannock Tribes. **The parties further agree that the Shoshone-Bannock Tribes Tribal Court will have exclusive jurisdiction over any and all disputes regarding this agreement**.

Dkt. No. 1-7, p. 19 of 42 (emphasis added). The Contract also specified that "the Shoshone-Bannock Tribal Court shall be the sole, proper and exclusive forum and venue" for legal proceedings commenced in connection thereto. *Id.*

By contracting with the Tribes and expressly consenting to Tribal Court for dispute resolution, Vanir subjected itself to Tribal Court jurisdiction in this case through express consent. In *Montana v. United States*, 450 U.S. 544 (1981), the Supreme Court held that "a tribe retains the inherent sovereign authority to 'regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases or other arrangements. Second, a tribe 'retain[s] inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has come direct effect on the political integrity, the economic security, or the health or welfare of the tribe.'" *FMC Corporation v. Shoshone-Bannock Tribes*, 942 F.3d 916, 932 (9th Cir. 2019) (quoting *Montana*, 450 U.S. at 565-66) (internal citations omitted). In determining whether a consensual relationship exists, "consent may be established 'expressly or by [the nonmember's] actions.'" Water Wheel, 642 F.3d 802, 818 (9th Cir. 2011)

REPLY IN SUPPORT OF MOTION FOR REMAND - 4

(quoting *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 338 (2008)); Nevada v. Hicks, 533 U.S. 353, 372 (2001). In this case, the Tribal Court's jurisdiction over Vanir was established by Vanir's express consent to Tribal Court jurisdiction and through Vanir's act of entering a commercial contract with the Tribe. This is precisely kind of "consensual relationship" discussed by the Supreme Court in *Montana* that supports the Tribal Court's jurisdiction over Vanir in the present case.

Vanir asserts, without authority, that the Tribal Court lacks jurisdiction over a case involving two non-tribal members. There is no such rule or authority to support this incorrect assertion. This case plainly involves a federally-recognized tribe as a plaintiff. And for the reasons outlined above, the Tribal Court has jurisdiction over Vanir based on the contract's express consent to Tribal Court jurisdiction. This express consent to Tribal Court exclusive jurisdiction in the Vanir Contract with the Tribes places this case squarely within the first *Montana* exception. *See Montana v. United States*, 450 U.S. 544, 565-66 (1981). In addition, the Supreme Court has observed that "parties to a contract may agree in advance to submit to the [personal] jurisdiction of a given court." *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964).[1]

### 2. Vanir did not plead, and therefore waived, lack of Tribal jurisdiction.

Second, Vanir missed its opportunity to contest the Tribal Court's jurisdiction. The Tribes Complaint in this case was filed in Tribal Court on February 27, 2023. Dkt. 1-2. Vanir was served with the summons and complaint on March 2, 2023. Dkt. 8-1, pg. 1. The Tribal Court Clerk entered default against Vanir on March 24, 2023. On March 27, 2023, Vanir filed a Motion to Dismiss and Memorandum in Support, which stated the grounds for the motion as follows: "Defendant Vanir

---

[1] Because "the personal jurisdiction requirement is a waivable right," the enforcement of a forum-selection clause is proper if such a provision was "freely negotiated" and not "unreasonable and unjust." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *see also Chan v. Soc'y Expeditions*, 39 F.3d 1398, 1407 (9th Cir. 1994) (holding that "a forum selection clause alone could confer personal jurisdiction.").

Construction Management, Inc. ("Vanir") moves to dismiss the Complaint under Law and Order Code of the Shoshone-Bannock Tribes § 4-1-49(b)(5), (6)." Dkt. 1-6, pg. 4. Section 4-1-49 of the Tribal Law and Order Code[2] lists defenses that must be included in a defendant's responsive pleading or made by motion.[3]

Vanir's March 27, 2023 Motion to Dismiss filed in Tribal Court <u>omitted</u> the defense of lack of subject matter jurisdiction, the defense of lack of personal jurisdiction, and the defense of insufficiency of service of process. Therefore, Vanir is precluded from now arguing that the Tribal Court lacks jurisdiction over this dispute.[4]

---

[2] The Shoshone-Bannock Tribes Law and Order Code is available online. Section 4-1-49 of the Tribal Law and Order Code can be viewed here: https://library.municode.com/tribes_and_tribal_nations/shoshone-bannock_tribes/codes/the_law_and_order_code?nodeId=CD_TIT4RUCIPR_CH1RUCIPR_S4-1-49DEOB

[3] Sec. 4-1-49. Defenses and Objections.

(a) All answers and replies shall be filed and served within 20 days after the service of the summons and complaint unless otherwise specified in these rules or by the Court.
(b) Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:
  (1) Lack of jurisdiction over the subject matter,
  (2) Lack of jurisdiction over the person;
  (3) Insufficiency of process;
  (4) Insufficiency of service of process;
  (5) Failure to state a claim upon which relief can be granted;
  (6) Failure to join a party under Section 4-1-56.
A motion making any of these defenses shall be made before pleading if further pleading is permitted ....
. . . .
(f) A party who makes a motion under this rule may join with it any other motions herein provided for and then available to him. ***If a party makes a motion under this rule but omits therefrom any defense or objection then available to him which this rule permits to be raised by motion, he shall be precluded from thereafter making the motion without leave of the Court***. The Court shall require a show of good cause before granting the making of that motion.

Shoshone-Bannock Tribes Law and Order Code, § 4-1-49 (emphasis added).

[4] The Court should apply Tribal law on this point. Section 14.3 of the Vanir contract contains a Tribal law choice of law provision: "Tribal Laws Apply. The parties hereto further agree the laws of the Shoshone-Bannock Tribes shall apply . . . ." Dkt. 1-7, pg. 19.

REPLY IN SUPPORT OF MOTION FOR REMAND - 6

C.  **The Tribal Attorney's Office is not a party to this case and is not subject to any claim requiring the assertion of tribal sovereign immunity.**

For the reasons explained above, the after-the-fact contract amendment is irrelevant to the Tribes claims in this case and this Court's analysis regarding Vanir's attempted removal of this case from Tribal Court. The Court does not need to decide whether the Tribal Attorney's Office possesses immunity from suit because the Tribal Attorney's Office is not a party to this case and has not been sued.

Even if a determination of the Tribal Attorney's Office's immunity from suit is somehow relevant to this case (it's not), the Tribal Attorney's Office serves as general counsel to the Tribes and possesses sovereign immunity from suit. "As a general proposition, Indian tribes are immune from suit in state or federal court." *United States v. State of Oregon*, 657 F.2d 1009 (9th Cir. 1981) (citing *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978)). This immunity also extends to tribal officials when acting in their official capacity and within the scope of their authority. *United States v. State of Oregon, supra,* 657 F.2d 1009, 1013, fn. 8 (citing *Davis v. Littell*, 398 F.2d 83, 84-85 (9th Cir. 1968), *cert. denied*, 393 U.S. 1018 (1969).

Vanir asks the Court to apply the five-factor test outlined in *White v. University of California*, 765 F.3d 1010, 1025 (2014) to determine whether the Tribal Attorney's Office is an "arm of the tribe." But this test only is applied where an entity is a named defendant and asserts tribal sovereign immunity. In *White*, the Kumeyaay Cultural Repatriation Committee was a named defendant and the 9th Circuit applied the five-factor test to find the Repatriation Committee was an arm of the tribe for sovereign immunity purposes. *Id.* at 1025. Similarly, other cases applying the test involve entities that are <u>named defendants</u> that assert they possess a tribe's sovereign

immunity.[5] In this case, the Tribal Attorney's Office is not a party to this case or subject to any claim that would require it to even assert sovereign immunity. Accordingly, it is unnecessary for the Court to exhaust resources applying the *White* test to the Tribal Attorney's Office in this case.

It is noteworthy, however, that tribal sovereign immunity has been extended to Tribal attorneys. For example, the court in *Great Western Casinos, Inc. v. Morongo Band of Mission Indians*, 74 Cal. App. 4th 1407, 1421, 88 Cal. Rptr. 2d 828, 838 (1999) specifically found that tribal sovereign immunity extended to a non-Indian law firm and general counsel for actions taken or opinions given in rendering legal services to the tribe in that case. *See id.; see also Davis v. Littell*, 398 F.2d 83, 84-85 (9th Cir. 1968) (extending immunity to a tribe's general counsel).[6]

**D.    The federal removal statute does not authorize removal of a tribal court case.**

Vanir incorrectly asks the Court to ignore the plain language of the removal statute (28 U.S.C. § 1441(a)), which only allows removal of certain "action[s] brought in State court"--not tribal courts. *Id.* Vanir bases its argument on *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473 (1999). However, the Court allowed removal from Tribal Court only because of the "unusual

---

[5] *See, e.g., Cadet v. Snoqualmie Casino*, 469 F. Supp. 3d 1011, 1014-15 (2020); *United States ex rel. Cain v. Salish Kootenai College, Inc.*, 862 F.3d 939, 944 (9th Cir. 2017); *Cole v. Alaska Island Community Services, Inc.*, 2019 WL 13211822; *Block v. Tule River Tribal Council*, 2022 WL 2533483 (E.D. Cal. 2022).

[6] The reasoning for extending tribal sovereign immunity to tribal attorneys is expressed well by the court in *Great Western Casinos v. Morongo Band of Mission Indians*:

> Moreover, as a sovereign the Morongo Band had the right to look beyond its own membership for capable legal officers, and to contract for their services. In performing their function counsel must be free to express legal opinions and give advice unimpeded by fear their relationship with the tribe will be exposed to examination and potential liability for the advice and opinions given. Refusing to recognize an extension of a tribe's sovereign immunity to cover general counsel's advice to the tribe could not only jeopardize the tribe's interests but could also adversely influence counsel's representation of the tribe in the future. For these reasons counsel in allegedly advising the tribe to wrongfully terminate the management contract are similarly covered by the tribe's sovereign immunity.

*Id.* at 1424. Mr. Bacon has been a full-time W-2 Tribal employee for more than 15 years as evidenced by Tribal Resolutions. The Tribal Attorney's Office is a branch of the tribal government. Evidence of this is found in the Tribes' Constitution at Art. VI, Section 1(b) (bestowing business council power "[t]o employ legal counsel" for the Tribes). Vanir also consistently invoiced the Tribes (not the Tribal Attorney's Office) and received payment from the Tribes. It is clear Vanir never thought it was doing business with any entity other than the Tribes.

REPLY IN SUPPORT OF MOTION FOR REMAND - 8

preemption provision" of the Price-Anderson Act, which provided for removal to federal court if a putative Price-Anderson action is brought in state court. *Id.* at 484. In applying the Price-Anderson Act to allow removal of tribal court actions for cases involving Price-Anderson actions, the Court relied specifically on the unique removal provision in the Act. The Court in *Neztsosie* did not base its decision on 28 U.S.C. § 1441(a). *See Nevada v. Hicks*, 533 U.S. 353, 368 (2001) ("And for the propriety of the injunction in *Neztsosie,* we relied not on § 1441, but on the removal provision of the Price–Anderson Act, 42 U.S.C. § 2210(n)(2).").

**E.     Vanir's notice of removal was untimely.**

Vanir relies on *Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689 (2005) to support its assertion that Vanir's 30-day time period for removal will not start until the Tribal Attorney's Office is named as a party to this case. Vanir's reliance on *Harris* is misplaced because the Tribal Court Complaint has never been amended or changed, and Vanir had possession and knowledge of the contract Amendment No. 8 since it signed the amendment on December 9, 2019.

**F.     The tribal exhaustion rule applies in this case.**

Vanir argues this Court should not defer to the Tribal Court under the comity and exhaustion rules based on its fantastic assertion that "tribal court jurisdiction is not plausible under the *Montana* exceptions." Dkt. 16, pg. 16. Vanir asserts this conclusion but provides neither legal authority nor factual support for this argument. As discussed above, the Tribal Court's exclusive jurisdiction over this case is grounded in the express consent of Vanir in the parties' contract and the consensual relationship between the Tribes and Vanir that unquestionably satisfies the first *Montana* exception.

**G.     An award of attorneys' fees in favor of the Tribes under 28 U.S.C. § 1447 is justified.**

As amended, section 1447(c) provides for "just costs and any actual expenses, including attorney fees, incurred as a result of the removal". *Moore v. Permanente Med. Grp., Inc.*, 981 F.2d

443, 446 (9th Cir. 1992). Congress has unambiguously left the award of fees to the discretion of the district court. *Id.* The Court may make "an award of fees when a defendant's removal, while 'fairly supportable,' was wrong as a matter of law." *Balcorta v. Twentieth Century–Fox Film Corp.,* 208 F.3d 1102, 1106 n. 6 (9th Cir.2000). Under this standard, the Court should award attorneys' fees and costs to the Tribes in this case, which involves neither an issue of first impression nor even difficult questions of law. Vanir has improperly removed this Tribal Court case ignoring the plain language of the parties' contract and the federal removal statute. Vanir has also wasted the Court's time asserting without authority that the Court should wait to rule on this jurisdictional motion to remand until after ruling on a motion to dismiss based on the baseless and offensive suggestion of unethical conduct by the Tribes' attorneys. Not only is the removal plainly improper on its face, but the manner of removal has been unreasonable and without legal support.

Respectfully submitted this 31st day of May 2023.


   */s/ Paul C. Echo Hawk*
Paul C. Echo Hawk

*Attorney for the Shoshone-Bannock Tribes and
Fort Hall Business Council*


# CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of May 2023, I filed the foregoing REPLY IN SUPPORT OF MOTION FOR REMAND, electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected in the Notice of Electronic Filing:

Elijah M. Watkins
elijah.watkins@stoel.com

   */s/ Paul Echo Hawk*
Paul C. Echo Hawk

REPLY IN SUPPORT OF MOTION FOR REMAND - 10