# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| SHOSHONE-BANNOCK TRIBES, and FORT HALL BUSINESS COUNCIL,<br><br>    Plaintiffs,<br><br>    vs.<br><br>VANIR CONSTRUCTION MANAGEMENT, INC.,<br><br>    Defendant. | Case No.  4:23-cv-00160-REP<br><br>**MEMORANDUM DECISION AND ORDER ON PLAINTIFFS' MOTION FOR REMAND**<br>**(Dkt. 7)** |

Before the Court is Plaintiffs Shoshone-Bannock Tribes and Fort Hall Business Council's Motion for Remand (Dkt. 7).  All parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Dkt. 18).  Having reviewed the parties' briefing, heard oral argument on the Motion, and otherwise being fully advised, the Court issues the following order.

## BACKGROUND

This is a breach of contract action.  In 2015, Defendant and Plaintiffs executed an agreement for Defendant to oversee the design and construction of a casino expansion project within the boundaries of the Fort Hall Reservation.  Compl. ¶ 8 (Dkt. 1-2).[1]  That contract contained a clause placing exclusive jurisdiction over all disputes arising from the contract in the Shoshone-Bannock Tribal Court.  Contract § 14.3 (Dkt. 1-7).  Further, the contract disclaimed any waiver of tribal sovereign immunity.  *Id.* § 14.2.

---

[1] Factual background information is drawn from Plaintiffs' Complaint because, "[i]n assessing whether . . . claims were properly removable . . . [courts] look to the plaintiff's pleadings." *Boggs v. Lewis*, 863 F.2d 662, 663-64 (9th Cir. 1988).

**MEMORANDUM DECISION AND ORDER – 1**

Pursuant to the contract, Defendant acted as Plaintiff's owner-representative during the design and construction process of "phase II" of the on-reservation casino expansion project. Compl. ¶ 9 (Dkt. 1-2).  Suffice to say, the project was plagued with difficulties.  *Id.* ¶¶ 10-14. Relevant here, significant disputes arose between Defendant and the project's general contractor, Ormund Builders, Inc. ("OBI").  *Id.* ¶ 14.  These disputes culminated in Defendant recommending that Plaintiffs terminate OBI, which they did in April of 2018.  *Id.* ¶ 15.  Around that same time, OBI filed three arbitration demands against Plaintiffs relating to Defendant's alleged mismanagement of the project.  *Id.* ¶¶ 17-18.  The arbitration panel eventually found in OBI's favor, awarding it $2,937,622.42 against Plaintiffs on October 30, 2019.  *Id.* ¶ 19.

In December 2019, the parties amended the contract ("Amendment 8" or "the Amendment") to remove Plaintiffs and substitute the Shoshone-Bannock Tribal Attorney's Office ("TAO") as a party to the contract.  Amendment 8 (Dkt. 6-16).  Amendment 8 indicated that it was effective as of the date signed – December 9, 2019 – but that "all terms and conditions of the Agreement, including any prior amendments . . . shall remain in full force and effect."  *Id.*

Plaintiffs subsequently filed a complaint against Defendant in Shoshone-Bannock Tribal Court in May of 2020, seeking to recover damages allegedly caused by Defendant's negligence and breach of the underlying contract for construction management services.  *Id.* ¶ 24.  However, the parties agreed to voluntarily dismiss the lawsuit to participate in non-binding mediation.  *Id.* When mediation failed, Plaintiffs refiled this lawsuit in tribal court on February 27, 2023.  *Id.* Defendant was served with the Complaint on March 2, 2023, and moved to dismiss in tribal court on March 27, 2023.  Dec. of Service (Dkt. 8-1); Mot. to Dismiss (Dkt. 3).

Defendant then filed a Notice of Removal with this Court on April 7, 2023.  NOR (Dkt. 1).  Defendant alleges that removal is proper because this Court has diversity jurisdiction under

**MEMORANDUM DECISION AND ORDER – 2**

28 U.S.C. § 1332.  *Id.* ¶ 4.  Shortly after removing this action, Defendant renewed its Motion to

Dismiss (Dkt. 3) and filed a Motion to Disqualify Counsel (Dkt. 6).  Plaintiffs then filed a timely

Motion for Remand and requested that their responses to Defendant's Motions be stayed until the

Court resolved the jurisdictional issue of remand.  Mot. for Remand at 11-12 (Dkt. 7).  The Court

granted that request on May 11, 2023.  (Dkt. 14).  The Court heard oral argument on the Motion

for Remand on July 18, 2018.  (Dkt. 19).

## LEGAL STANDARD

Section 1441(a) of Title 28 provides: "any civil action brought in a State court of which

the district courts of the United States have original jurisdiction, may be removed by the

defendant or the defendants, to the district court of the United States for the district and division

embracing the place where such action is pending."  28 U.S.C. § 1441(a) ("the removal statute"

or "§ 1441").  The removal statute is strictly construed against removal and "[f]ederal

jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."

*Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  "The strong presumption against removal

jurisdiction means that the defendant always has the burden of establishing that removal is

proper."  *Id.* (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n.12 (9th

Cir. 1990)).

## DISCUSSION

Plaintiffs argue that this matter should be remanded to Tribal Court for four reasons: (i)

the removal statute does not apply to civil actions brought in tribal court; (ii) even if the action

could be removed, Defendant did not timely do so; (iii) this Court lacks jurisdiction over

Plaintiffs because of tribal sovereign immunity; and (iv) notwithstanding any of the above,

longstanding principles of comity require Defendant to exhaust its remedies in tribal court before

challenging tribal jurisdiction here.  Mot. for Remand at 1 (Dkt. 7).  Defendant's Response by-

**MEMORANDUM DECISION AND ORDER – 3**

and-large relies on Amendment 8, arguing that removal is proper because (i) Plaintiffs are not the real parties in interest, (ii) the TAO is the real party in interest, and (iii) because the TAO is not an arm of the tribe, the tribal court lacks jurisdiction.  Mem. in Opp'n to Mot. for Remand at 2 (Dkt. 16).

**A.  The removal statute is inapplicable to civil actions initiated in tribal courts.**

The power of removal is purely statutory.  *Bundy v. St. Lukes Health Sys. Ltd.*, Case No. 1:23-cv-00212-DCN, 2023 WL 3572315, at *2 (D. Idaho May 19, 2023).  Therefore, the "scope and terms" of removal are "entirely dependent" on the language of the statute being invoked to remove the case.  *Id.*  Here, Defendant seeks to remove this action under § 1441.[2]  NOR (Dkt. 1). In pertinent part, the removal statute states that "any civil action brought in a *State court*" may be removed to federal district court.  28 U.S.C. § 1441(a) (emphasis added).  The plain language of the removal statute, then, does not reference tribal courts.  Nor does the legislative history of the statute.  *See* H.R. REP. NO. 80-308, at 133-34 (1947); H.R. REP. NO. 79-2646, at 128-29 (1946).

Defendant cites no case – and the Court has found none – in which a court has held that an action was removable from a tribal court under § 1441.  Indeed, although not many courts have addressed the question, those that have uniformly hold that actions initiated in tribal court are not within the ambit of the removal statute.  *See, e.g.*, *Williams-Willis v. Carmel Fin. Corp.*, 139 F. Supp. 2d 773, 775-76 (S.D. Miss. 2001) (collecting cases and law review articles); *accord Becenti v. Vigil*, 902 F.2d 777, 780 (10th Cir. 1990) (holding that "State court" as that term is used in 28 U.S.C. § 1442, a removal statute similar to § 1441, did not include an action commenced in tribal court).  The Court will not stray from settled law in this field and joins other

---

[2] Defendant's Notice of Removal does not explicitly reference § 1441 as the basis for removal. However, at the July 18, 2023, Motion Hearing, Defendant confirmed that it sought removal under that statute.

**MEMORANDUM DECISION AND ORDER – 4**

courts in holding that the plain language of § 1441 does not allow removal of civil actions from tribal courts. *See Williams-Willis*, 139 F. Supp. 2d at 775-76; *Weso v. Menominee Indian Sch. Dist.*, 915 F. Supp. 73, 76 (E.D. Wis. 1995); *Gourneau v. Love*, 915 F. Supp. 150, 152-53 (D.N.D. 1994); *White Tail Prudential Ins. Co. of Am.*, 915 F. Supp. 153, 154-55 (D.N.D. 1995); *see also Philip Morris USA, Inc. v. King Mountain Tobacco Co.*, 569 F.3d 932, 939 (9th Cir. 2009) (explaining that "the federal removal statute d[oes] not provide for removal from tribal court").

Defendant offers only one argument to rebut this conclusion, contending that § 1441 implicitly allows removal from tribal courts.[3] Mem. in Opp'n to Mot. for Remand at 14-15 (Dkt. 16). Defendant relies on *El Paso Natural Gas v. Neztsosie*, 526 U.S. 473 (1999) for this novel argument. In *El Paso*, two members of the Navajo Nation sued various energy companies in Navajo tribal court, raising tort claims related to uranium mining on the Navajo Reservation. 526 U.S. at 477-78. The energy companies moved to enjoin the tribal court proceedings in the United States District Court for the District of Arizona. *Id.* at 478. They argued that the tribal court lacked jurisdiction because the plaintiffs' claims were governed by a unique federal law, the Price-Anderson Act, which controlled "public liability actions" relating to "nuclear incidents." *Id*. The district court denied the energy companies' request for a preliminary injunction. *Id.* It reasoned that the companies were required to exhaust their tribal remedies before seeking relief in federal court and that the question of whether the Price-Anderson Act applied to the plaintiffs' claims should be reserved for the tribal court in the first instance.[4] *Id.*

---

[3] Defendant's other argument, that the removal statute is irrelevant because it *could have* brought an independent action to enjoin tribal court jurisdiction, runs squarely into the tribal exhaustion doctrine, discussed *infra*.

[4] The tribal exhaustion doctrine is discussed in full, *infra*. For context here, tribal exhaustion generally requires a party challenging tribal court jurisdiction to exhaust remedies in tribal courts

**MEMORANDUM DECISION AND ORDER – 5**

The Supreme Court ultimately reversed, holding that the tribal exhaustion doctrine did not apply to the defendants' jurisdictional challenges. *Id.* at 483-84. The Court looked to various provisions of the Price-Anderson Act, including a provision that allowed removal from state courts, and reasoned that "Congress . . . expressed an unmistakable preference for a federal forum, at the behest of the defending party, both for litigating a Price-Anderson claim on the merits and for determining whether a claim falls under Price–Anderson when removal is contested." *Id.* at 484-85. Finding that comity principles underlying the tribal exhaustion doctrine were overridden by the clear congressional intent to consolidate liability claims relating to nuclear incidents in federal court, the Court held that the district court should have decided whether the plaintiffs' claims were covered by the Price-Anderson Act and, if so, enjoined tribal jurisdiction. *Id.* at 487-88.

Defendant's argument is not persuasive because it misreads *El Paso* and is otherwise foreclosed by relevant Ninth Circuit and Supreme Court precedent. Contrary to Defendant's assertion, *El Paso* does not stand for the premise that "state courts" can be read to implicitly include tribal courts. Rather, the Court in *El Paso* merely looked to the Price-Anderson Act's removal provision – as well as other parts of the Act – to conclude that the tribal exhaustion doctrine did not apply to requests to enjoin tribal court jurisdiction over Price-Anderson Act claims. *Id.* at 485-88. Put differently, the Court did not hold that the Price-Anderson Act's removal provision implicitly extended to tribal courts, it held that district courts could enjoin tribal court jurisdiction over Price-Anderson Act claims without requiring exhaustion of tribal

_____

before seeking recourse in the federal courts. *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856-57 (1985).

**MEMORANDUM DECISION AND ORDER – 6**

remedies.  *Id.*  As such, *El Paso* offers no support for Defendant's argument that this Court could interpret § 1441 to implicitly allow removal from tribal courts.

Moreover, to the extent that Defendant seeks to apply the reasoning of *El Paso* to interpreting § 1441 at all, the Supreme Court has already rejected that argument.  *See Nevada v. Hicks*, 533 U.S. 353, 366-69 (2001).  In *Hicks*, the Court held that tribal courts do not have jurisdiction to hear 42 U.S.C. § 1983 claims.  533 U.S. 353, 368 (2001).  The Court reasoned that allowing such claims to proceed in tribal court would create "serious anomalies" under § 1441, because the removal statute "refers only to removal from *state* court."  *Id.* (emphasis in original).  Thus, § 1983 defendants in tribal court would be deprived of a right of removal enjoyed by § 1983 defendants in state court.  *Id.*  The United States, as *Amicus Curiae*, argued that § 1983 defendants in tribal court could bring their cases to federal court by seeking injunctive relief under *El Paso* because § 1441 demonstrated an overriding congressional intent to have claims arising under federal law adjudicated in federal courts.  *See* Brief for the United States as *Amicus Curiae* at 25-27, *Nevada v. Hicks*, 533 U.S. 353 (2001) (No. 99-1994), 2001 WL 28669.  The Court squarely rejected this argument, reasoning that § 1441, unlike the Price-Anderson Act, did not have "detailed and distinctive provisions" demonstrating a clear intent to have § 1983 defendants be able to litigate in federal court in all instances.  *Hicks*, 533 U.S. at 368-69.

Finally, on-point Ninth Circuit precedent forecloses any argument that "state court" as that term is used in § 1441 is implicitly broader than the fifty states.  *See People of Territory of Guam v. Landgraf*, 594 F.2d 201, 202 (9th Cir. 1979).  When interpreting 28 U.S.C. § 1443, a removal statute with similar language to § 1441, the Ninth Circuit held that "State court" did not include any entities "other than . . . the fifty states."  *Id.*  The court, citing various statutes that expanded the definition of "state court" in § 1443, reasoned that when Congress had intended to

**MEMORANDUM DECISION AND ORDER – 7**

broaden the definition of "state court," it had done so expressly. *Landgraf*, 594 F.2d at 202

(citing 28 U.S.C. § 1451 and 48 U.S.C. § 864). The exact same reasoning applies here, as both

statutes invoked by the court in *Landgraf* apply with equal force to § 1441. *See* 28 U.S.C. §

1451 (defining "State court" in §§ 1441, 1442, and 1443 to include the Superior Court of the

District of Columbia); 48 U.S.C. § 864 (stating that laws relating to removal "as between the

courts of the United States and the courts of the several States shall govern . . . as between the

United States District Court for the District of Puerto Rico and the courts of Puerto Rico").

In sum, there is no legal authority that supports Defendant's reading of § 1441. The plain

language of § 1441 – and unlike the Price-Anderson Act, the absence of congressional intent to

the contrary – does not include tribal courts. This action was improvidently removed, requiring a

remand to Shoshone-Bannock Tribal Court.

**B. Defendant did not timely remove this action.**

Even if the Court accepted Defendant's argument that this action could be removed under

§ 1441, it would nonetheless hold that removal was untimely because Defendant removed more

than thirty days after receiving a pleading which revealed a basis for federal jurisdiction.

Section 1446(b) of Title 28 "provides two thirty-day windows during which a case may

be removed." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 692 (9th Cir. 2005). First, a

notice of removal must be filed "within 30 days after the receipt by the defendant, through

service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which

such action or proceeding is based." 28 U.S.C. § 1446(b)(1). This clock begins to tick "only

when th[e] [initial] pleading affirmatively reveals on its face the facts necessary for federal court

jurisdiction." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) (citing

*Harris*, 425 F.3d at 690-91). Thus, removability "is determined through examination of the four

corners of the applicable pleadings, not through [a defendant's] subjective knowledge or a duty to make further inquiry." *Harris*, 425 F.3d at 694.

Otherwise, a second thirty-day window applies, opening when "a defendant receives 'a copy of an amended pleading, motion, order or other paper' from which it can determine that the case is removable." *Id.* (quoting 28 U.S.C. § 1446(b)).  Accordingly, "[o]nce [a] defendant is on notice of removability, the thirty-day period begins to run." *Id.* at 697.  "When the defendant receives enough facts to remove on *any basis* under section 1441, the case is removable, and section 1446's thirty-day clock starts ticking." *Durham*, 445 F.3d at 1253 (emphasis added).

Defendant argues neither of the thirty-day windows for removal have opened because the TAO, as the real party in interest, has not been added as a party to any pleading, motion, order, or other paper.  Mem. in Opp'n to Mot. for Remand at 15 (Dkt. 16).  Therefore, Defendant contends that removal was timely, notwithstanding its actual knowledge of Amendment 8 and invocation of that knowledge as the basis for removal under § 1441.  The Court is not convinced and concludes that removal jurisdiction – if it exists at all – was apparent to Defendant and ascertainable as of the date it received the Complaint.  *See Harris*, 425 F.3d at 696.

Defendant relies exclusively on *Harris v. Bankers Life and Casualty Co.*, to argue that a court may never consider a defendant's subjective knowledge in calculating when either thirty-day clock begins running.  Defendant has read that case too broadly.  In *Harris*, the Ninth Circuit addressed "whether, under 28 U.S.C. § 1446(b), the burden lies with the defendant to investigate the necessary jurisdictional facts within the first thirty days of receiving an indeterminate complaint, or whether the determination be limited to the face of the initial pleading." 425 F.3d at 693.  As to that question, the Court ultimately held "that notice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not

**MEMORANDUM DECISION AND ORDER – 9**

through subjective knowledge or a duty to make further inquiry." *Id.* at 694.  Thus, *Harris* only prohibited the consideration of subjective knowledge in reference to the first thirty-day clock, not the second.

Moreover, to the extent *Harris* discussed the second thirty-day window, it did so with reference to the defendant's knowledge of diversity jurisdiction.  *Id.* at 696.  Specifically, the case concerned a plaintiff raising various state-law claims against an insurance company and insurance agent in state court.  *Id.* at 691.  Although the insurance company and the plaintiff were diverse from each other, diversity jurisdiction was not readily apparent from the face of the complaint because the plaintiff only alleged the insurance agent's residency, not his citizenship. *Id.*  Approximately ten months after the plaintiff initiated the action, he had yet to serve the insurance agent.  *Id.*   Additionally, the plaintiff opposed "any efforts to continue the trial date," leading the insurance company to "conclude[] that [plaintiff] had effectively abandoned his claims against" the agent.  *Id.*  The company sought removal within thirty days of concluding that the plaintiff had abandoned his claims against the insurance agent because the remaining parties were completely diverse.  *Id.*  The Ninth Circuit rejected any argument that the insurance company had an affirmative duty to investigate diversity of the parties within thirty days of the initial complaint and held that defendant timely sought removal within § 1446(b)'s second window.  *Id.* at 695-96.  The Court noted that diversity between the parties – and thus removability – was ascertainable within thirty days of it "becom[ing] apparent" that claims against the insurance agent had been abandoned.  *Id.*  In other words, the defendant had notice of removability sufficient to trigger the second clock and filed within that window.

The same is true here, as Defendant knew that Amendment 8 changed the parties to the contract and that Defendant and the TAO were purportedly diverse from each other.  Defendant

**MEMORANDUM DECISION AND ORDER – 10**

had notice of diversity jurisdiction as of the time it received the Complaint and at least the second thirty-day window for removal opened at that time.[5] Accordingly, Defendant's attempt at removal was untimely because it had the necessary facts to ascertain diversity jurisdiction as of March 2, 2023, and failed to remove until April 7, 2023.  Accordingly, if Defendant's theory that § 1441 applies to tribal courts is correct, the Court would nonetheless remand this matter as untimely removed.  *See Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212-13 (9th Cir. 1980) (explaining that the thirty-day time limit for removal is not jurisdictional, but it "is mandatory and a timely objection to a late petition will defeat removal").

### C. Notwithstanding statutory barriers to removal, remand is also proper because the Court lacks jurisdiction and Defendant has not exhausted tribal remedies.

The cornerstone of Defendant's argument in favor of removal is that the TAO, not Plaintiffs, is the real party in interest.  Mem. in Opp'n to Mot. for Remand at 4 (Dkt. 16).  Since the TAO is the real party in interest, Defendant argues, this matter involves a contract between two non-tribal members and is outside the scope of tribal court jurisdiction.  *Id.* at 11.  This argument falls flat for two reasons: (i) it would require this Court to exercise jurisdiction it does not possess and (ii) any issues relating to tribal court jurisdiction are reserved for the tribal court in the first instance.

1. Plaintiffs enjoy tribal sovereign immunity, and this Court could not change the parties to this lawsuit without exercising impermissible jurisdiction over Plaintiffs.

Defendant's suggestion that this Court may adjudicate this case with the TAO substituted

---

[5] In the alternative, the Complaint also facially stated a federal question sufficient to trigger the first clock under § 1441, because "whether an Indian tribe retains the power to compel a non-Indian . . . to submit to the civil jurisdiction of a tribal court . . . is a 'federal question' under § 1331."  *Nat'l Farmers Union Ins. Cos.*, 471 U.S. at 852.  Therefore, even though Defendant asserts diversity as a basis for removal, it had earlier notice of another basis for removal and had to file within thirty days of that notice.  *See Durham*, 445 F.3d at 1253 ("[L]ater disclosure that the case is also removable on another ground under section 1441 doesn't help bring [a defendant] into federal court.").

**MEMORANDUM DECISION AND ORDER – 11**

in place of Plaintiffs is mistaken.  While Defendant argues that the TAO is not entitled to tribal sovereign immunity, it does not dispute (nor could it) that Plaintiffs are entitled to sovereign immunity.  *See Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014) ("Among the core aspects of sovereignty that tribes possess – subject, again, to congressional action – is the common-law immunity from suit traditionally enjoyed by sovereign powers.") (internal quotation marks omitted).  A tribal sovereign immunity defense may be waived; however, when it is "timely and successfully invoke[d]" courts "lack subject matter jurisdiction."  *Acres Bonusing, Inc. v. Marston*, 17 4th 901, 908 (9th Cir. 2021).  "Without jurisdiction the court cannot proceed at all in any cause; it may not assume jurisdiction for the purpose of deciding the merits of the case."  *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (cleaned up).  Put differently, without subject matter jurisdiction, a court may not assume any "substantive 'law declaring power.'"  *Id.* at 433 (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584-85 (1999)).

Here, it appears that Defendant's end-game is to have Plaintiffs removed from this action and the TAO, as the real party in interest, substituted in their stead.  Questions about a defendant being able to choose its plaintiff notwithstanding, reaching that result would require this Court to exercise "substantive law declaring power," because determining who the real party in interest is requires application of substantive law.  *See Swendsen v. Corey*, No. 4:09-cv-229-BLW, 2012 WL 602726, at * 1 (D. Idaho Feb. 23, 2012) ("A plaintiff must be the 'real party in interest,' possessing the right to sue under the applicable substantive law, in order to pursue a claim.") (citing *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1038 (9th Cir. 1986)).  Consequently, the Court cannot reach that question until it is assured of its subject matter jurisdiction.  *See Sinochem Int'l*, 549 U.S. at 431.  And, on that front, Plaintiffs without question possess

sovereign immunity.  They timely raised it and have not waived, depriving this Court of subject matter jurisdiction.  A remand to Shoshone-Bannock Tribal Court, then, is also appropriate on this basis.

    2. <u>Tribal jurisdiction is colorable, and any question regarding that jurisdiction is for the tribal court to decide in the first instance.</u>

Plaintiffs argue that even if this Court concludes that the removal statute reaches tribal courts, removal was timely, and that it could exercise jurisdiction to decide who is the real party in interest, this case should nonetheless be remanded under the tribal exhaustion doctrine.  Mot. for Remand at 9-10 (Dkt. 7).  Defendant, in contrast, asserts that there is no reason to apply that doctrine here because tribal jurisdiction in this case is not even colorable.  Mem. in Opp'n to Mot. for Remand at 16 (Dkt. 16).

"[P]rinciples of comity require[] federal courts to dismiss or abstain from deciding cases in which concurrent jurisdiction in an Indian tribal court [is] asserted." *Crawford v. Genuine Parts Co.*, 947 F.2d 1405, 1407 (9th Cir. 1991) (citing *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845 (1985) and *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9 (1987)). A federal court faced with a challenge to tribal court jurisdiction must "stay[] its hand" and allow the tribal court, as "the forum whose jurisdiction is being challenged" to have "the first opportunity to evaluate the factual and legal bases for the challenge." *Nat'l Farmers Union Ins.*, 471 U.S. at 856-57.  A plaintiff cannot obtain relief in federal court enjoining tribal court jurisdiction until all available tribal court remedies, including appeals, have been exhausted. *Landmark Gold. Ltd. P'ship v. Las Vegas Paiute Tribe*, 49 F. Supp. 2d 1169, 1173 (D. Nev. 1999).  "Once remedies have been fully exhausted, a tribal court's determination of tribal jurisdiction presents a federal question and is therefore subject to consideration in federal court." *Id.* (citing *Yellowstone Cnty. v. Pease*, 96 F.3d 1169, 1172 (9th Cir. 1996)).  Exhausting tribal

**MEMORANDUM DECISION AND ORDER – 13**

remedies is mandatory, not discretionary, and federal courts "may not relieve the parties from exhausting tribal remedies." *Crawford*, 947 F.2d at 1407.

That said, the tribal exhaustion doctrine has exceptions. For instance, exhaustion is not required where tribal jurisdiction is asserted in bad faith or "motivated by a desire to harass." *Id.* Nor is exhaustion required when the tribal court action is "patently violative of express jurisdictional provisions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." *Id.* Finally, exhaustion is not required where tribal jurisdiction is plainly lacking, "so that the exhaustion requirement 'would serve no purpose other than delay.'" *Elliott v. White Mountain Apache Tribal Ct.*, 566 F.3d 842, 847 (9th Cir. 2009). Defendant asserts that exhaustion is not required in this instance because the Shoshone-Bannock Tribal Court plainly lacks jurisdiction.

Deciding whether the "plainly lacking" exception to the tribal exhaustion doctrine applies requires an assessment of whether tribal jurisdiction is "colorable" or "plausible." *Elliot*, 566 F.3d at 848. Tribal civil jurisdiction over non-members is closely intertwined with tribal sovereignty. The Supreme Court has recognized two instances where tribes retain inherent sovereign authority to exercise civil authority over non-members: (i) when non-members enter "consensual relationships with the tribe . . . through commercial dealing, contracts, leases, or other arrangements" or (ii) when non-member conduct "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Montana v. United States*, 450 U.S. 544, 565-66 (1981). "[D]etermining the scope of tribal court jurisdiction is not an easy task." *Elliott*, 566 F.3d at 849. Fortunately, this Court need not make a definitive finding on that question, as it only decides if jurisdiction is colorable.

**MEMORANDUM DECISION AND ORDER – 14**

Defendant's argument that the tribal court plainly lacks jurisdiction turns on its interpretation of Amendment 8.  At the July 18, 2023, Motion Hearing, Defendant relied on *Cayne v. Washington Trust Bank*, 125 F. Supp. 3d 1128 (D. Idaho 2015) for the premise that it is "black letter contract law . . . that once a contract is assigned, the assignee stands in the shoes of the assignor." *Id.* at 1147 (internal quotation marks omitted).  Defendant's theory appears to be that Amendment 8 assigned all of Plaintiffs' interests in the contract to the TAO, making the TAO the real party in interest as it relates to any claims for breach of contract arising both before and after Amendment 8 was signed.  The Court is not convinced.

To be sure, Defendant does not misstate the law as it relates to an assignee's rights following an assignment.  Yet, Defendant's argument assumes too much.  It is not clear whether Amendment 8 could reasonably be construed as an assignment in the first place.  Even if it was an assignment, it is not clear what interests may have been assigned to the TAO.  *See Winn v. Amerititle, Inc.*, 731 F. Supp. 2d 1093, 1098-99 (D. Idaho 2010) (first analyzing whether an assignment was valid, then determining what the assignee acquired as a result of the assignment).

"An assignment is a transfer or setting over of property, or of some right or interest therein, from one person to another." *Zakarian v. Option One Mortg. Corp.*, 642 F. Supp. 2d 1206, 1213 (D. Haw. 2009).  "To be effective, an assignment must include manifestation to another person *by the owner* of his intention to transfer the right, without further action, to such other person or to a third person." *Jim 72 Props., LLC v. Montgomery Clearners*, 151 F. Supp. 3d 1092, 1100 (C.D. Cal. 2015) (internal quotation marks omitted) (emphasis added).[6]

---

[6] The Court recognizes that *Jim 72* applied California law, and the governing substantive law relating to the contract here would likely be Shoshone-Bannock Tribal Law.  *See* Contract ¶ 14.3 (Dkt. 1-7).  The Shoshone-Bannock Law and Order Code provides that "in all civil cases, [courts] shall apply the provisions of this Law and Order Code" and for "matters . . . not covered by the provisions of this Code" courts "shall apply the traditional customs and usages of the

**MEMORANDUM DECISION AND ORDER – 15**

Conspicuously absent from Amendment 8 is any mention of Plaintiffs' intention to transfer any rights to the TAO.  *See* Amendment 8 (Dkt. 6-16).  Accordingly, there is nothing on the record showing an assignment of any rights from Plaintiffs to the TAO, as Amendment 8 is signed only by the TAO and Defendants.

Moreover, even if the Court assumed that Amendment 8 was an assignment between Plaintiffs and the TAO, it is unclear what property interests may have passed to the TAO by virtue of that assignment.  Just as an individual may assign an interest in a contract, so to may that individual assign an interest in a cause of action.  *See Jim 72*, 151 F. Supp. 3d at 1097 ("the ability to assign one's rights and interests in suit to another has been recognized for centuries") (citing *Sprint Commc'n Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 275, 285 (2008)). However, an interest in a contract and an interest in a breach of contract action are discrete property interests, so assignment of a contract will not necessarily carry with it any cause of action relating to that contract that accrued before the date of the assignment.  *See Farm Bureau Co-op Mill & Supply Inc. v. Blue Star Foods, Inc.*, 238 F.2d 326, 329-31 (8th Cir. 1956) (holding that an assignment of a mortgage contract did not transfer an interest in a conversion suit based on the mortgaged property arising before the assignment).  Accordingly, a court will not assume that a cause of action has been transferred absent some expression of the parties' intent to that effect.  *See Knott v. McDonald's Corp.*, 147 F.3d 1065, 1067 (9th Cir. 1998) (applying Illinois law and analyzing whether the language of an assignment agreement demonstrated an intent to transfer an interest in a contract, or in the contract and a preexisting breach of contract claim);

---

Shoshone-Bannock Tribes."  Shoshone-Bannock Law & Order Code § 4-1-2(a)-(b).  A definition of "assignment" is not provided for in the text of the Law and Order Code, and the Court is not familiar with the customs and usages of the Shoshone-Bannock Tribes.  In any event, this analysis is offered not as a definitive ruling on whether an assignment exists, but only to demonstrate why the Court is persuaded that tribal jurisdiction over this matter is colorable.

**MEMORANDUM DECISION AND ORDER – 16**

*Farm Bureau*, 238 F.2d at 330 ("the assignment was but a simple assignment of the mortgage and did not purport to assign the cause of action in conversion—already vested in the finance company").  Again, Amendment 8 is silent as to whether Plaintiffs intended to transfer their interest in a breach of contract action – which accrued before the amendment was signed – or merely transfer their interest in performance under the contract.

In short, Amendment 8 does not establish that tribal jurisdiction is "plainly lacking." While the Amendment may raise questions regarding who the real party in interest is, it is insufficient to defeat a claim that tribal jurisdiction here is at least colorable.  To the contrary, this action involves a contract for construction management services at an on-reservation casino expansion project that at all times relevant to the Complaint was between Plaintiffs and Defendant.  Further, the agreement provided for "exclusive jurisdiction" in the Shoshone-Bannock Tribal Court.  Contract § 14.3 (Dkt. 1-7).  These facts are enough to convince the Court that tribal jurisdiction is plausible under *Montana*'s first prong.  *Montana*, 450 U.S. at 565 ("A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements."). Consequently, a remand is appropriate under the tribal exhaustion doctrine, as the Shoshone-Bannock Tribal Court should address the legal and factual bases of Defendant's challenges.

## D.  Attorney Fees

Plaintiffs request attorney fees pursuant to 28 U.S.C. § 1447(c).  That provision allows a discretionary award of attorney fees "incurred as a result of the removal."  28 U.S.C. § 1447(c). However, fees should be awarded "only where the removing party lacked an objectively reasonable basis for seeking removal."  *Grancare, LLC v. Mills ex rel. Thrower*, 889 F.3d 543, 552 (9th Cir. 2018).  The Court declines to award attorney fees.  While Defendant did not

**MEMORANDUM DECISION AND ORDER – 17**

persuade the Court that this action was removable, the Court finds that Defendant's attempt at removal was not without a reasonable basis.  That is, Defendant raised good faith questions with respect to the real party in interest that implicate the propriety of tribal court jurisdiction. Although those questions are best left to the Shoshone-Bannock Tribal Court, they are not trivial or unreasonable.

<u>**ORDER**</u>

ACCORDINGLY, IT IS HEREBY ORDERED that:

1.  Plaintiffs' Motion for Remand (Dkt. 7) is GRANTED and this matter is REMANDED to the Shoshone-Bannock Tribal Court for the Fort Hall Reservation.

2.  Defendant's Motion to Dismiss (Dkt. 3) is DENIED as moot.

3.  Defendant's Motion to Disqualify (Dkt. 6) is DENIED as moot.

4.  The Clerk's Office is directed to close the case.

DATED: July 24, 2023

Raymond E. Patricco
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER – 18**